## Churchill's Estate.

*Wills—Execution—Insufficiency—Failure to sign at end—Act of April 8, 1833, P. L. 249—Vacation of probate.*

1. The Wills Act of April 8, 1833, P. L. 249, was intended to form a complete system, by which a posthumous disposition of property might be made.

2. The purposes of the Act of 1833 were to secure accuracy in the transmission of the testator's wishes, the authentication of the instrument transmitting them, the identification of the testator and certainty as to his completed testamentary purpose.

3. Where a testator used a printed blank form for making his will, and inserted his name in the attestation clause and in that part of the blank to be signed by the subscribing witnesses, reading "Signed, sealed, published and declared by the above named P. Churchill" (the testator), etc., but did not sign opposite the seal, on the line designed for the testator's signature, or elsewhere at the end of the paper, the will was not signed at the end thereof, as required by the Act of 1833, and was void.

Argued Oct. 1, 1917.   Appeal, No. 132, Oct. T., 1917, by George R. Churchill, from decree of O. C. Indiana Co., March T., 1916, No. 101, affirming decree of register of wills admitting to probate a testamentary paper as the will of P. Churchill, in Estate of P. Churchill, deceased. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.   Reversed.

Appeal from decree of register of wills admitting to probate a writing as the will of P. Churchill, deceased. Before LANGHAM, P. J.

From the record it appeared that the case turned upon whether a paper admitted to probate as a will had been signed by the decedent at the end thereof.   On appeal from the decree of the register admitting it to probate the facts were agreed upon in the following case stated:

P. Churchill was a merchant in the village of Hillsdale. At the time of his death he was aged about eighty-two years.   He had been engaged in the mercantile business for many years; held the office of postmaster for a number of years.

On a printed form, in his own handwriting, P. Churchill wrote the paper offered for probate.   There was no testimony as to when he wrote the paper, nor as to whether or not it was written on one or more occasions.   The paper is dated the 14th day of April, 1914, and this date is in the handwriting of P. Churchill.

At some time he tore off the lower end of the first sheet (i. e. a part of pages 1 and 2 of said paper writing), and in his own hand, with a different pen or different ink, wrote what appears on page 2 of said paper writing. There is no evidence on this phase of the paper, except inferences which may be drawn from inspection.

All of the writing on said alleged will, including the name of P. Churchill wherever it occurs, and excepting only the signature of the witnesses, J. D. Spicher and John Rankin, is in the proper handwriting of said P. Churchill.

J. D. Spicher and John Rankin signed said will as subscribing witnesses, at the request of P. Churchill, under the circumstances set forth in their testimony taken before the register of wills at No. 51, March Term, 1916, endorsed, "Testimony of Subscribing Witnesses," filed herewith and made part of this case stated.

It is expressly agreed that the whole of the testimony of the subscribing witnesses so taken and filed herewith, so far as the same may be material and competent, shall be considered by the court with the same weight and effect as if said testimony had been given before the court.

After the paper had been signed by J. D. Spicher and John Rankin as witnesses, P. Churchill sealed the paper in an envelope and delivered it to Dr. Hileman, saying to him: "This is my will and I want you to keep it for me."

The will remained in the custody of Dr. Hileman until after the death of P. Churchill; the sealed envelope had not been opened or the paper in any way interfered with from the time it was delivered by P. Churchill to Dr. Hileman, by whom it was turned over, in the same condition, to Cyrus Rank, who, with his attorney, John H. Pierce, had custody of the paper until it was offered for probate; the paper is now in the same condition it was when delivered by P. Churchill to Dr. Hileman.

The name of P. Churchill, in his proper handwriting, appears in three different places in the alleged will: at the beginning of the will in the expression, "I, P. Church-

ill, of Hillsdale," etc.; in the attestation clause in the expression, "In Witness Whereof, I, P. Churchill, the testator above named, have hereunto subscribed my name and affixed my seal the fourteenth day of April in the year of our Lord one thousand nine hundred 14—1914"; and finally in that part of the blank to be signed by the subscribing witnesses in the expression, "Signed, sealed, published and declared by the above named P. Churchill," etc.

P. Churchill was a man of average intelligence, and as postmaster through a series of years, was accustomed to filling out blanks pertaining to his office.

In the blank used to prepare the paper writing, immediately after the attestation clause, there is provided a line for signature with a seal thereafter, which is wholly blank.

The alleged paper writing is made a part of this case stated.

J. D. Spicher, one of the witnesses who signed the attestation clause, testified that the decedent said, "This is my will, I have signed it." John Rankin, the other witness the decedent said, "I wish you to witness my name to a paper." The court dismissed the appeal from the action of the register, holding that the paper had been signed by the decedent at the end thereof as his will. It was in the following form:

"I, P. Churchill, of Hillsdale, County of Indiana, and State of Pennsylvania, being of sound mind, memory and understanding, do make and publish this my last Will and Testament, hereby revoking and making void all former Wills by me at any time heretofore made.

"1st. I wish all my just debts and funeral expenses be paid. 2nd. I bequeath to my wife the lot and dwelling on north side of Main street with all its contents and One Hundred and Fifty Dollars ($150) per year during her life. 3rd. I bequeath to George R. Churchill Twenty Five Dollars ($25) in lieu of what I have previously given him as book will show. 4th. I bequeath Two Hun-

dred Dollars ($200) to Mrs. Winnie McConahay. 5th. I bequeath Two Hundred Dollars ($200) each to Donald and Martha Churchill. 6th. To Merton E. Churchill I bequeath Five Hundred ($500) beside the note and book account I hold. 7th. To Mrs. Elsie Standish and Mrs. Sarah F. Ake I bequeath One Thousand Dollars ($1,000) each. 8th. To John S. Churchill I bequeath the dwelling I now live in and lot on which it stand, to have possession at death of my wife by him paying One Thousand Dollars to the estate in six equal anual payments without interest. 9th. To W. T. Churchill I bequeath the farm he lives on by him paying One Thousand Dollars ($1,000) to the estate in six equal anual payments without interest. 10th. The balance of my estate I wish divide as folow One Third share one third share divided equally between Mrs. Winnie McConahay & Don and Martha Churchill. If any of the beneficiaries named in this will file objections to same shall thereby forfeit all claim to any benefit therein unless by a full agreement by all.

"I do hereby make, constitute and appoint Cyrus P. Rank to be Executor of this my last Will and Testament.

"In witness whereof, I, P. Churchill, the Testator above named, have hereunto subscribed my name and affixed my seal, the fourteenth day of April in the year of our Lord one thousand nine hundred 14—1914.

"...................... (SEAL)

"Signed, sealed, published, and declared by the above named P. Churchill, as and for his last Will and Testament, in the presence of us, who have hereunto subscribed our names at his request as witnesses thereto in the presence of the said Testate and of each other.

"J. D. SPICHER
"JOHN RANKIN."

The court dismissed the appeal from the decree of the register of wills. George R. Churchill appealed.

1918.]    Assignment of Error—Opinion of the Court.

*Error assigned* was the decree of the court.

*G. J. Feit,* of *Peelor & Feit,* for appellant.—The alleged will is not signed at the end thereof as required by the Wills Act, April 8, 1833, P. L. 249: Hays v. Harden, 6 Pa. 409; Baker's App., 107 Pa. 381.

The will is not signed at all: Knox's Est., 131 Pa. 220.

*D. B. Taylor,* for appellees.—The intention of the testator to sign the will is sufficiently disclosed by the instrument.

The will is signed at the logical end thereof and should be sustained.

OPINION BY MR. CHIEF JUSTICE BROWN, January 7, 1918:

The requirement of the Act of April 8, 1833, P. L. 249, is that every will shall be in writing and signed by the testator "at the end thereof." This is a most wholesome provision and remedied mischiefs which existed at the time the act was passed, for the English Statute of Frauds was held to have been satisfied whenever the name of the testator, in his own handwriting, appeared in the introductory or any other part of the instrument offered for probate: Hays v. Harden, 6 Pa. 409. "Our statute of wills, passed April 8th, 1833, was intended to form a complete system, by which a posthumous disposition of property might be made. In our endeavors to ascertain its meaning, we must so construe it as to make it consistent with itself. Nor should we lose sight of the mischiefs which existed at the time when it was enacted; mischiefs which it was designed to remedy. Among those, none was more serious than the facility with which unfinished papers, mere inchoate expressions of intention, were admitted to probate as valid wills of decedents. Letters, memoranda, mere notes unsigned, which were entirely consistent with a half formed purpose, and which may have been thrown aside,

and never intended to be operative, were rescued from their abandonment, proven as wills, and allowed to prevail as dispositions of property which there was much reason to believe the decedent never intended. It was to remedy this mischief that the Act of 1833 provided, that every will should be signed at the 'end thereof.' That thus, by his signature in that place, the testator should show that his testamentary purpose was consummated, and that the instrument was complete": Heise v. Heise, 31 Pa. 246. "The purposes of the Act of 1833 were accuracy in the transmission of the testator's wishes, the authentication of the instrument transmitting them, the identification of the testator, and certainty as to his completed testamentary purpose. The first was attained by requiring writing instead of mere memory of witnesses, the second and third by the signature of testator, and the last by placing the signature at the end of the instrument. The first two requirements were derived from the English statute; the third was new (since followed by the Act of 1 Vict. c. 26), and was the result of experience of the dangers of having mere memoranda or incomplete directions taken for the expression of final intention: Baker's App., 107 Pa. 381; Vernon v. Kirk, 30 Pa. 223": Knox's Est., 131 Pa. 220.

The paper admitted to probate in the present case is a printed form of a will, all the written portions of it being in the handwriting of P. Churchill, the decedent. When he filled up the blank spaces and wrote directions and bequests in it, he saw printed immediately below the testimonium clause the word "seal," and this clearly indicated to him—admittedly a man of intelligence—where he was to sign his name as testator. It was the end of the printed form of the will which he used, and if he had signed his name there, the instrument would have been executed as the statute requires, even if there had been no attestation clause signed by witnesses; but he did not sign his name at what was so clearly the end of the paper as a will. What he did do was to write his

name in three blank spaces in the paper—first at the top
and then in the testimonium and attestation clauses. In
doing so he was merely acting as his own scrivener; but
because he said to one of the two attesting witnesses,
"This is my will, I have signed it," and to the other, "I
wish you to witness my name to a paper," and subse-
quently handed it to a physician, saying, "This is my
will, and I want you to keep it for me," the learned court
below was of opinion that the "testamentary purpose
was complete and that the signature in the attestation
clause meets every statutory requirement of being 'at
the end thereof.' "

The decedent may have thought he had made a will,
but the statute says he had not. The question is not one
of his intention, but of what he actually did, or rather
what he failed to do. He failed to sign the paper at the
end thereof, and this essential requirement of the statute
is not met by the insertion of his name in his own hand-
writing in three blank spaces in the printed form of the
paper which he may have intended to use in executing
his will. "It may happen, even frequently, that genuine
wills, namely, wills truly expressing the intentions of
the testators, are made without observations of the re-
quired forms; and whenever that happens, the genuine
intention is frustrated by the act of the legislature, of
which the general object is to give effect to the intention.
The courts must consider that the legislature, having re-
gard to all probable circumstances, has thought it best,
and has therefore determined, to run the risk of frus-
trating the intention sometimes, in preference to the risk
of giving effect to or facilitating the formation of spuri-
ous wills, by the absence of forms. It is supposed, and
that authoritatively, that the evil of defeating the inten-
tion in some cases, by requiring forms, is less than the
evil probably to arise by giving validity to wills made
without any form in all cases": Smee v. Bryer, 6 Moore
P. C. 404. In Wineland's App., 118 Pa. 37, after the
signature of the testator at the end of the will there fol-

lowed an unsigned clause appointing executors, and, in reversing the court below in directing the register to admit the paper to probate as the last will and testament of the deceased, we said: "Our Act of 1833 as well as the statute of Vict. are in part borrowed from the British statute of frauds, two sections of which have been so evaded by judicial construction as to be practically repealed. We do not propose that the Act of 1833 shall meet with the same fate. The legislature have laid down a rule so plain that it cannot be evaded without a clear violation of its terms. No room is left for judicial construction or interpretation. It says a will must be signed at the end thereof, and that's the end of it. We are of opinion that this paper was not a will within the meaning of the Act of 1833, and that it was error to admit it to probate."

Swire's Est., 225 Pa. 188, cited by counsel for appellee, is not an authority sustaining the action of the court below. All that was there decided was that, as the signature of the testatrix appeared at the end of the codicil, it was in compliance with the statutory requirement, notwithstanding some marginal bequests on the same page, above the signature.

The precise question before us on this appeal does not seem to have been passed upon in any of our cases. Sears v. Sears, 77 Ohio 104, a well considered case, supports the contention of the appellant, and in its reasoning we concur. There, as here, the decedent used a printed blank form of will. The blanks in the testimonium and attestation clauses were filled in by her, and then read as follows, including the signatures of the two witnesses:

"In testimony whereof, I have set my hand to this my last will and testament, at Lakewood, Ohio, this Sixth day of June, in the year of our Lord One Thousand Nine Hundred and Three.

"......................."

"The foregoing instrument was signed by the said Arminda S. Nicholson in our presence, and by her published and declared as and for her last will and testament; and at her request, and in her presence, and in the presence of each other, we hereunto subscribe our names as attesting witnesses, at Lakewood, Ohio, this Sixth day of June, A. D. 1903.

"J. W. Southern, resides at Lakewood, O.

"Julia K. Southern, resides at Lakewood, O."

The statute of Ohio, like our own, requires every will to be in writing and signed at the end thereof. It was contended that because Arminda S. Nicholson had written her name in the attestation clause, it was equivalent to her signature at the end of the will, and the circuit court so held. In reversing this and holding that the will had not been executed as required by the statute, the Supreme Court of the State held as follows: "In the case before us, the will is not signed by the testatrix at the end thereof. The testimonium clause is as follows:

" 'In testimony whereof, I have set my hand to this my last will and testament, at Lakewood, Ohio, this Sixth day of June, in the year of our Lord One Thousand Nine Hundred and Three.

" '. . . . . . . . . . . . . . . . . . . .'

"The obvious purpose for which this blank line was left was for the signature of the testatrix, and it was intended as the end of the will. The absence of her signature there not only discloses that the will is not signed by her at the end thereof, but also implies that she did not sign it at all. The attestation clause signed by the witnesses recites that the foregoing instrument was signed by the said Arminda S. Nicholson in our presence, but this does not change the facts, and in the absence of a signature is without legal effect. If a scrivener had prepared the will and had written her name where it appears in the attestation clause, her name there would have been merely descriptio personæ; and when it is shown that the testatrix was her own

scrivener, the natural presumption is that it was so intended; and even if the fact was that the testatrix wrote her name there, intending by that act to sign her will, still her signature would not be at the end of the will, and her intention could not have the effect of transposing it. The question is, not what did the testatrix intend, but what did she do?"

The decree is reversed at the costs of the appellee, and it is ordered that the letters testamentary be revoked and the probate vacated.