## Donaldson's Estate.

The facts appear from the opinion of

SINKLER, J., Hearing Judge.—This is an appeal from the decision of the register of wills admitting to probate a certain paper writing dated February 4, 1930, as the last will of the above-named decedent. The appeal is taken by John Stothart, guardian *ad litem* of the estates of John Donaldson and others, minor children of the decedent. By decree of this court dated July 11, 1930, he was appointed guardian *ad litem* for the purpose of taking this. appeal. As a part of the record we find, in addition to the petition for probate and the original will, the affidavits made before the deputy register of wills of Joseph M. Albright and Dennis A. Daly, that they were familiar with the testator's signature, had carefully examined the signature "Thomas Donaldson" to the will dated February 4, 1930, and verily believed it to be in his own proper handwriting. To this is added: "the signature of testator appears in attestation clause." By virtue of this affidavit, which is dated June 4, 1930, the register of wills on that day ordered and decreed that the last will and testament dated February 4, 1930, of Thomas Donaldson be admitted to probate, and letters testamentary were issued to Jane G. Donaldson, the executrix named in the will.

The appeal is dated July 17, 1930, and on that date security was ordered and entered in the sum of $500.

On July 25, 1930, upon motion of John W. Dickerson, Esq., counsel for the guardian *ad litem* of John Donaldson and others, minor children of the decedent, a decree was entered granting a citation on Jane G. Donaldson, executrix and sole beneficiary of the will of Thomas Donaldson, to appear and show cause why the action of the register of wills in admitting the said paper to probate and the issuing of letters testamentary thereon should not be revoked. In consequence of this decree, a citation was issued and service thereof was accepted in behalf of Jane G. Donaldson, the executrix, by her attorney, Ruby R. Vale, Esq.

On August 5, 1930, the answer of Jane G. Donaldson was filed, averring that she was informed and verily believed that the paper admitted to probate as the last will and testament of the said Thomas Donaldson was properly executed and was a valid will under the laws of this Commonwealth. On August 5, 1930, a replication was filed whereby the petitioner joined issue on the matters alleged in the answer.

On June 11, 1931, the appeal came before me for hearing, but no evidence was offered, nor was oral argument had. Briefs of argument have been submitted to me in support of the appeal and against it. After consideration of the record and the briefs of argument, it was ordered by me that testimony be taken as to any facts that might be relevant to the issue before the court, and on October 14, 1931, Jane G. Donaldson and John Stothart appeared as witnesses before me. Their testimony is a part of this record.

The original paper writing which has been admitted to probate as a will by the register of wills has been examined. A photostatic copy thereof will be annexed to this adjudication.*

It will be noted that the main body of the paper writing is typed, as is the attestation clause. The introductory clause begins: "I, Thomas Donaldson." The name is written in ink in the handwriting of the decedent. The first clause directs the payment of his debts, the second gives the residue of his estate to his wife, and at the end of the clause her name is written in ink, evidently in the same handwriting. The third clause appoints his wife executrix, and there again her name is inserted, evidently in the same handwriting.

In the testimonium clause, the date "4th day of Feb.," with the last two figures in the year 1930, are evidently in the same handwriting. Then ensues an interval of one line, according to spacing of the typewriter, followed by the attestation clause. In this clause the name of the decedent is again inserted, evidently in the same handwriting, following the typed words: "Signed, sealed, published and declared by the above named." The typed form concludes with two dotted lines to the left and two to the right. There is no dotted line or word "seal" between the main body of the will and the attestation clause.

While the signature appears in the attestation clause, it is likewise in the position relative to the body of the will that is usually adopted for the execution of a will.

In behalf of the appellant, it is contended that the writing of the testator's name in the attestation clause does not constitute execution of the will in accordance with section two of the Wills Act of 1917, and that it is no more than descriptive of the person. Counsel relies on Churchill's Estate, 260 Pa. 94, in support of his contention, and argues that the facts in the present case are practically identical with those in Churchill's Estate.

In behalf of the widow, it is argued that the present case is to be distinguished from Churchill's Estate, and that every requirement of the statute,

and particularly that the will must be signed at the end thereof, has been fully complied with by the testator.

The determination to be reached upon the appeal depends upon whether the present case is or is not to be distinguished from Churchill's Estate. In the latter case, the will was likewise upon a form, but a printed and not a typed form. Not only were the names and dates filled in, but a substantial part was in the handwriting of the testator. The testimonium clause contained his name, the date was followed by a dotted line, and the word "seal" surrounded by a scroll. All of this appears from the copy of the will as set forth on pages 97 and 98 of 260 Pa. (Churchill's Estate), as well as the fact that testator did not sign his name on the dotted line opposite the word "seal." It also appears that his name was written in the attestation clause, but from the reported copy it is impossible to determine how much space existed between the body of the will and the attestation clause, or the exact position of the testator's name in the attestation clause. The Hearing Judge, therefore, obtained from Langham, P. J., Fortieth Judicial District, Indiana, Pennsylvania, a photostatic copy of the will of Churchill, which will likewise be annexed to this adjudication.* From an examination thereof, it appears that a space occurs between the dotted line and the seal and the attestation clause equal to four lines of the printed form. At the end of the first line of the attestation clause there is a space of an inch and three-quarters, which has not been filled. The testator's name, P. Churchill, is written on the left side of the second line, and a space of an inch and one-quarter to the right of his name remains unfilled in the second line. The attestation clause is complete through the proper execution thereof by the attesting witnesses. This paper writing was admitted to probate by the Register of Wills of Indiana County, and an appeal dismissed by Langham, P. J., of that county. An appeal from his decision to the Supreme Court of the state was sustained. The decree was reversed, and it was ordered that letters testamentary be revoked and the probate vacated. The Supreme Court, in an opinion by Chief Justice Brown, found that the will did not fulfill the requirements of the Act of April 8, 1833, P. L. 249, which required that every will should be in writing and signed by the testator "at the end thereof." Some of the earlier decisions of the Supreme Court are reviewed, and the court found that when the testator filled up the blank spaces and wrote his testamentary provisions, he must have seen immediately below the testimonium clause the place for his signature and the word "seal." This should have indicated to him where he was to sign his name as testator. But, the court continues, he did not sign his name at what was so clearly the end of the paper, but he inserted his name in three blank spaces, at the beginning of the will, in the testimonium clause and in the attestation clause. In so doing, the court held he was merely acting as his own scrivener, and the statements that he made to the attesting witnesses to the effect that this was his will, and that he had signed it, and that he had subsequently handed it to a physician for safe-keeping, did not constitute a proper execution of the will. "The question is not one of his intention, but of what he actually did, or rather what he failed to do. He failed to sign the paper at the end thereof, and this essential requirement of the statute is not met by the insertion of his name in his own handwriting in three blank spaces in the printed form of the paper which he may have intended to use in executing his will."

An examination of the paper books before the Supreme Court shows that the appellee attached considerable weight to the fact that at some time the testator had torn off the lower part of the first sheet, that is, a part of pages

one and two, and in his own hand, with a different pen, or different ink, had written what appears on page two. No reference is made to this argument in the opinion of the Supreme Court, whose decision is rested on the fact that the testator did not sign his name in the place which was manifestly intended for his signature, but merely filled it in in the attestation clause as he had in two other places in the will.

The present case is to be distinguished from Churchill's Estate in essential features, and the appeal from the register of wills should be dismissed for the reason that the present will has been properly executed. The most important feature of distinction is the fact that in the present case the attestation clause is of no effect because there are no attesting witnesses. Scarcely less important is the fact that in Churchill's Estate there was a place clearly designated by the dotted line, the seal and the space between the testimonium clause and the attestation clause where the will itself ended and the signature should have been placed; whereas in the present case there is no dotted line or seal, the space between the body of the will and the attestation clause is small, and the name is written in the proper place according to general usage, that is, at the end of the body of the will, at the right-hand side.

While it has been held in Churchill's Estate that statements made by the testator were ineffective because he had failed to execute the will according to the statute, the evidence before me is not without weight. It appears that testator's wife had for some time urged him to make a will. At least two of her brothers and their wives had made wills, and one of her brothers suggested getting a copy of the form used by him. This was a typewritten form originally obtained from a minor officer or clerk of a trust company in this city whereof copies were made by the testator's brother-in-law. A number of these copies were executed by his friends and relatives, and apparently all of them in the same manner as the present.

There has been offered in evidence the widow's will, in exactly the same form as that made by the testator, and signed in exactly the same place. When testator signed his name he understood, his widow testified, that it was not necessary to have the will witnessed, and for that reason there were no attesting witnesses. It also appears that after he had signed the will he handed it to his wife, and said: "That fixes everything until we get a proper will made." It was his intention to consult a lawyer and have a formal will drawn. The brother-in-law, John Stothart, testified that a neighbor of his said that he had made a will, that he would make a copy of it, and that the witness himself then made a number of copies for himself, his wife, this testator and his wife. The will, he said, was supposed to have been written by a man in one of the large trust companies in the center of the city for whom the witness's friend worked.

This testimony establishes, if no more, that the testator properly executed the will, and negatives the idea that he inserted his name in the attestation clause, and put the will aside only to be executed when attesting witnesses could be found, or for some other convenient opportunity.

Some of the decisions rendered by the Supreme Court earlier than Churchill's Estate are applicable to the present case, as showing the purpose of the enactment of the Act of April 8, 1833, known as the Wills Act. It appears that the statute was enacted in order to prevent abuses which existed before its passage. Letters, memoranda, notes of a determination not conclusively reached and never intended to be used as wills, were probated as such. Following the English statute of frauds, it had been held that wherever the testator's name in his own handwriting was found in the introductory or

other part of the testament, it was sufficient. The purpose of requiring that every will be signed at the end thereof was to show that the testamentary intent was consummated, and that the instrument was complete.

In Wineland's Appeal, 118 Pa. 37, a paper -writing concluded: "This is my will written April 26th, 1880 [signed] Benjamin Wineland." There followed: "I will that that [sic] Cephas Lash and Henry Wineland be my executors." This in turn was followed by a clause of attestation duly executed. The Supreme Court held that, the clause appointing the executors being of testamentary effect, the will was not signed at the end as required by the statute, and was not valid. This decision led to the enactment of the present statute, which provides that the presence of testamentary words or directions, or the appointment of an executor or the like, following the signature to a will, whether written before or after the execution thereof, shall not invalidate that which precedes the signature: section .two of the Wills Act of 1917.

Applying to the present case the principles which exist as to the cause for the requiring of the signature at the end of the will, it is found that the testator did, in fact, sign his name in such a place as to indicate that the testamentary purpose was consummated, and the instrument complete. The part of the clause of attestation which precedes and follows his signature is of no effect in the present case, because of the absence of attesting witnesses.

The proviso above quoted in our present Wills Act is applicable to the present case. Even if it be considered that the unexecuted attestation clause had effect, the wording following his signature would not invalidate that which precedes it.

While validity of the present will depends upon the statute of this state relating to the execution of wills, and the decisions construing it, nevertheless, decisions of other courts are not without value as showing the trend of judicial interpretation.

In re Woodington, 2 Curtis Ecc. 324 (1839), the attestation clause was as follows: "Signed and sealed as and for the will of me, Catherine Elizabeth Thicknesse Woodington in the presence of us. Thomas Hughes, Ellen Hughes." Sir Herbert Jenner said: "The deceased, by placing her name where it stands, seems to have intended that it should answer the purpose of a description as well as of a signature, and such signature being at the foot or end of the will, and the will being written by the .deceased, . . ." and held that there was a valid execution thereof.

In re Gunning, 1 Robertson Ecc. 460 (1846), the testimonium clause was as follows: "In witnes whereof I have hereunto set my hand. and seal Jane Randolph Gunning the 25th day of Sept. 1845," which followed an executed attestation clause. This paper was admitted to probate as a will.

The requirements of the English statute with regard to execution are the same as in this state.

In re De Hart, 67 Misc. (N. Y.) 13 (1910), it was held that where testatrix writes her name in a blank space left for that purpose in the body of the attestation clause, immediately following her holographic will; she has subscribed the will at the end thereof as required by the statute. In this case the attestation clause was signed by the attesting witnesses.

In Matter of Noon, 31 Misc. (N. Y.) 420 (1900), and in Matter of Acker, 5 Demarest's Reports (N. Y.) 19 (1886), the facts were the same as in the De Hart case, and the wills were admitted to probate.

The present case is to be distinguished from Churchill's Estate for the reasons given, and for the further reason that the purpose for which the

present Wills Act was enacted has been accomplished by the testator executing the will in the manner designated, as above described.

A proper understanding of the present will and of the distinction made between it and the will of Churchill can only be had by an examination of the original wills, or of exact photostatic copies thereof. Therefore, there will be annexed to this opinion photostatic copies of each of these wills.*

The position of testator's signature in the attestation clause of one will may not effect a valid execution thereof, but it does not follow of necessity that in every such case the will is not executed in accordance with the statute. The exact position of the signature, in relation to the body of the will, the presence of attesting witnesses or otherwise, and other existing circumstances must be considered in each particular case.

` * The relevant portion of the Donaldson will is:

I _____ *Thomas Donaldson* _____ make this as and for my last will and testament, hereby revoking all former wills made by me.

First, I direct the settlement of all my just debts as soon after my death as convenient.

Second, All the rest, residue and remainder of my estate, real — personal and mixed of which I may die, seized or possessed or which I may have in expectancy, I give dense, and bequeth to my wife _____ *Jane G. Donaldson* _____ Absolutely.

Third, I nominate constitute and appoint my wife _____ *Jane G. Donaldson* _____ executrix of this my will.

In witness whereof I have hereunto set my hand and seal this _____ *th* _____ day of _____ *Feb.* _____ A.D. *1930.*

Signed, sealed, published and declared by the above named _____ *Thomas Donaldson* _____ as and for his last will and testament in the presence of us, who, at his request, in his presence and in the presence of each other have hereunto subscribed our names as witnesses.

The relevant portion of the Churchill will is:

IN WITNESS WHEREOF, I, _____ *P. Churchill* _____ , the Testator above named, have hereunto subscribed my name and affixed my seal, the _____ *Fourteenth* _____ day of _____ *April* _____ in the year of our Lord one thousand nine hundred *14 — 1914*

................................... (SEAL)

Signed, sealed, published and declared by the above named........................

_____ *P. Churchill* _____ as and for _____ *his* _____ last Will and Testament, in the presence of us, who have hereunto subscribed our names at _____ *his* _____ request as witnesses thereto in the presence of the said Testat and of each other.

*J. D. Spicher*
*John Rankin*

NOTE.—Words italicized are, in the original wills, in the handwriting of the respective testators, except the signatures of the subscribing witnesses to `the Churchill will.

*John W. Dickerson,* for exceptant; *Ruby R. Vale,* contra.

HENDERSON, J., December 31, 1931.—The facts are set forth in great detail in the adjudication of the Presiding Judge, and need not be repeated here.

He has held that the will was properly admitted to probate, and in doing so has examined and clearly distinguished the instant will from the will which was refused probate in Churchill's Estate, 260 Pa. 94.

If the unexecuted attestation clause were cut from this will it is unlikely that anyone would contest the due execution of the instrument in accordance with the Act of June 7, 1917, P. L. 403, section 2.

Furthermore, this section provides:

"'That the presence of dispositive or testamentary words or directions, or the appointment of an executor, or the like, after the signature to a will, whether written before or after the execution thereof, shall not invalidate that which precedes the signature."

Under this proviso, the two typewritten lines appearing under the signature of the testator are rendered innocuous; an examination of the typewriting to the left of the signature shows that it is connected in thought with the typewriting under the signature, and should be disregarded as those two lines have been.

In other words, if the writing in question were above the signature, or below the signature, the due execution would be admitted; why should we give any more effect to the nine words to the left of the signature of the testator?

He has refused to use the attestation clause, and therein he finds a dotted line which is also at the end of the will and on this line places his signature, as we think he could properly do.

The exceptions are dismissed, and the decree of the Presiding Judge is confirmed absolutely.

LAMORELLE, P. J., was absent.