## Keller, Appellant, *v.* Lawson.

*Wills—Testamentary capacity — Issue devisavit vel non — Evidence—Verdict against weight of evidence—Judgment n. o. v.*

1. On the trial of an issue devisavit vel non the trial judge sits as a chancellor and is not bound by the verdict, and should not sustain it when against the manifest weight of the evidence; but when final judgment is entered on the verdict, the Orphans' Court is concluded thereby.

2. In such case the trial judge should consider the entire evidence; and the question is not whether some of the testimony, standing alone, would justify the verdict but whether it would considered as a whole.

3. On the trial of an issue devisavit vel non awarded on the

ground of alleged testamentary incapacity and undue influence, it appeared that deceased was a woman seventy-three years of age at the time of her death; that during the last twenty-six years of her life she resided with a daughter, the proponent and sole beneficiary under her will; that for the five years prior to her death she was rendered bedfast by paralysis; that another daughter, the contestant, was married, separated from her husband and living in a manner displeasing to her mother; that testatrix sent for her attorney, who drew her will and it was read to her in the presence of witnesses; that she expressed her satisfaction therewith and sent for her pastor and a neighbor to act as subscribing witnesses; that owing to her physical disability and at her request the minister wrote her name and then affixed her mark; and that the subscribing witnesses, her family physician, who had attended her for thirty-seven years, and a number of other disinterested witnesses who saw her near the date of the execution of her will, expressed the opinion that she was then of sound mind, memory and understanding. Evidence adduced by the contestant consisted mainly of testimony of a sister of deceased and the sister's two sons, who testified that at the time of the execution of the will deceased was almost entirely paralyzed; that her memory was exceedingly defective; that she recognized her relatives only with difficulty, was childish, and in their opinion unable to transact business or execute a will; and the testimony of three medical experts, who had never seen the deceased. There was no evidence that deceased was insane or had any delusions. The weight of the evidence was that in spite of her physical weakness and poor eyesight she was able to recognize acquaintances to the end. The jury found that no undue influence had been exercised upon deceased but that the will was invalid for want of testamentary capacity. *Held*, the finding of testamentary incapacity was against the manifest weight of the evidence and should have been set aside, and judgment entered for the proponent.

Argued April 17, 1918. Appeal, No. 67, Jan. T., 1918, by plaintiff, from judgment of C. P. Luzerne Co., March T., 1916, No. 667, on verdict for defendant in case of Chid Keller v. Blanche Lawson. Before BROWN, C. J., MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Issue devisavit vel non. Before WOODWARD, J.

The facts appear by the opinion of the Supreme Court.

The jury found the will invalid for want of testamen-

tary capacity on the part of deceased.   Chid Keller appealed.

*Error assigned,* among others, was in refusing plaintiff's motion for judgment non obstante veredicto.

*J. Q. Creveling,* with him *D. L. Creveling,* for appellant.—A verdict should have been directed for the plaintiff: Englert v. Englert, 198 Pa. 326; Wilson v. Mitchell, 101 Pa. 495; Palmer's Est., 219 Pa. 303.

The mental capacity of the testator is to be judged by his condition at the time he performed the testamentary act: Rose's Est., 223 Pa. 454; McCormick v. McCormick, 194 Pa. 107.

*W. Alfred Valentine,* with him *T. B. Miller,* for appellee, cited: Robinson v. Robinson, 203 Pa. 400; McCormick v. McCormick, 194 Pa. 107; Sharpless's Est., 134 Pa. 250.

OPINION BY MR. JUSTICE WALLING, June 3, 1918:

This appeal is from judgment entered upon a verdict for contestant in an issue devisavit vel non.   Susan Mack died January 17, 1914, leaving two married daughters who are the parties to this suit.   The paper writing admitted to probate as her last will is as follows: "I, Susan Mack, of Larksville, make and publish this my last will and testament.   It is my will that my entire estate real and personal be given to my daughter, Chid Keller, absolutely.   I appoint my said daughter, Chid Keller, to be executrix of this my last will and testament. In witness whereof, I have hereunto set my hand and seal this thirteenth day of August, A. D. 1913.

"SUSAN MACK X (SEAL).

"In presence of
"J. W. PRICE,
"HORACE J. SMITH."

From the probate thereof, the other daughter, Blanche Lawson, took an appeal to the Orphans' Court, where an issue was awarded to determine the questions of testamentary capacity and undue influence. The jury resolved the latter question in favor of Chid Keller, the proponent, but found the will invalid for lack of mental capacity to make it; this appeal by proponent is from judgment entered on the verdict. In such case the trial judge sits as a chancellor and is not bound by the verdict, nor should he sustain it when against the manifest weight of evidence. However, when final judgment is entered on the verdict the Orphans' Court is concluded thereby: Union Trust Company v. People's Trust Company, 254 Pa. 385, 390. The trial judge fell into error in treating it as advisory only to the Orphans' Court; this may have influenced his decision. In our opinion the verdict cannot be sustained. While there is some conflict in the evidence, that for contestant is not sufficient to overcome the presumption of testamentary capacity, supported as it is by clear and abundant affirmative evidence.

Mrs. Mack, who was possessed of an estate of about thirty thousand dollars, and had been a woman of strong physical and mental vigor, suffered such a stroke of paralysis about five years prior to her death as to render her thereafter crippled and practically bedfast. The paralysis was of the left side and later the right side also became partially disabled. Mrs. Mack lived to the age of seventy-three years, the last twenty-six of which Mr. and Mrs. Keller lived with her as one family in a home which she owned. She was a widow and they nursed and cared for her during the long illness above mentioned. The other daughter, Mrs. Lawson, was married and lived away, and, when the will in question was made, was temporarily estranged from her husband and children and living in a manner highly displeasing to her mother. Then, according to the evidence for proponent, Mrs. Mack decided to change her will and sent

directions to her attorney, who in accordance therewith drew the will here in question and sent it to the testatrix, to whom it was read and reread in presence of witnesses. She expressed satisfaction therewith and sent for her pastor and a neighbor as witnesses to its execution. They came, the matter was talked over, she said in substance that she knew the nature of the paper and the effect of its execution and that it was her will. They signed their names as witnesses, and, owing to her physical inability and at her request, the minister wrote her name and she then affixed her mark. The neighbor remained and she explained to him fully why she had given the property to Mrs. Keller and why she had given nothing to Mrs. Lawson. He had known her for thirty years, frequently visited and conversed with her and as a subscribing witness expresses the opinion that she was then of sound mind, memory and understanding. The minister (the other subscribing witness) who visited her two or three times a week during the years 1911, 1912 and 1913, and was in the habit of conversing with her, expresses his judgment that her mind was clear and sound and that she knew the nature and value of her property and fully about the will. His testimony is unequivocal and emphatic. To like effect is the testimony of Mrs. Avery, a neighbor, who was there just before the will was executed and heard it read to Mrs. Mack, and also that of the three ladies from the lodge who came and spent the next evening with her in honor of her birthday and conversed with her for over two hours on various subjects; also that of the dressmaker who did work in the home earlier in the season and of others who conversed with her near the end of that year. They all knew her well and their evidence is that the testatrix could and did converse intelligently and was of good mind. To different witnesses Mrs. Mack expressed satisfaction at the disposition she had made of her property and clearly indicated that she understood the will. True, the paralysis had affected her speech and rendered

conversation with her somewhat difficult, but the evi-
dence is that she did talk intelligently with the witnesses
mentioned, and with others.   Then there is the family
doctor, who knew her intimately and had been her phy-
sician for thirty-seven years and was in the habit of talk-
ing with her and who visited her professionally in July,
August and December, 1913, and he says her mind was
normal and that she was thoroughly capable of knowing
what she wanted to do, but that she could not articulate
well.   All the testimony to which we have referred is af-
firmative in character, comes from disinterested wit-
nesses, familiar with the matters about which they speak,
and is seemingly credible and convincing.   To like im-
port is the testimony of Mr. and Mrs. Keller and their
daughter.   They, however, took an active part in pro-
curing the making and execution of the will, and at the
trial assumed the burden of disproving any undue in-
fluence on their part and did so to the satisfaction of the
jury, who found for Mrs. Keller on that issue.

Testimony submitted for contestant included, inter
alia, that of Mrs. Mack's sister, Mrs. Morrish, and her
two sons, tending to show that the testatrix had suffered
from paralysis for fifteen years and that when the will
was made she was entirely paralyzed, except a slight use
of her right hand; that they saw her often and tried to
converse with her and were unable to do so; that she
was in a state of partial coma and had at times a vacant
look and was difficult to arouse; that her memory was
exceedingly defective and she could not keep a secret;
that it was with difficulty she recognized her relatives
and that she was very childish, grew worse and in their
opinion was unable to make a will or do any business.
This found some corroboration in evidence of other wit-
nesses, but the majority of the testimony of contestant's
other lay witnesses was of dubious import and of slight
value.   In addition, three doctors, who never saw Mrs.
Mack, were called as experts and answered hypothetical
questions.   The expert evidence indicates that paralysis

usually results from a brain lesion and tends to break down the tissue and to weaken and sometimes destroy the mind, and that it is apt to progress. Doubtless this is true, yet it is common knowledge that people so afflicted do transact business. There is no evidence that Mrs. Mack was insane or had any delusions, and the facts testified to by contestant's witnesses are by no means conclusive of her inability to make a will. We do not know why she did not or could not converse with her sister and the sister's sons, but undoubtedly she did converse with so many other people as to establish her ability to do so. Certainly a verdict that she could not converse would be against the manifest weight of the evidence. Near the end, her eye sight became very poor, which may account for her seeming inability to recognize people. However, the weight of the evidence is that she did even then recognize acquaintances. The other infirmities to which reference is made, such as forgetfulness, etc., are not uncommon to old age. There was great physical weakness, which might easily be confounded with mental incapacity. Like most invalids she was doubtless better some days than others. While such a person might often seem to comprehend less than she actually did she would not be likely to seem to comprehend more. There is nothing in the disposition made of the property or on the face of the will that tends to impeach it, and it is supported by abundant affirmative evidence.

Here the court sits as a chancellor and must consider the entire evidence, and the question is not whether some of the testimony, standing alone, would justify the verdict, but whether it would considered as a whole: See Kane's Est., 206 Pa. 204, 207; Roberts v. Clemens, 202 Pa. 198; Mulholland's Est., 217 Pa. 65; Draper's Est., 215 Pa. 314; Eddey's App., 109 Pa. 406; Phillips' Est., 244 Pa. 35; Hersperger's Est., 245 Pa. 569. Starting with the presumption of testamentary capacity and considering the entire case, the verdict is so decidedly

against the manifest weight of the evidence that it cannot stand: See Shreiner v. Shreiner, 178 Pa. 57; Englert v. Englert, 198 Pa. 326. The jury having found there was no undue influence, the court should have entered judgment for the proponent (plaintiff in the issue) non obstante veredicto. It is not necessary to consider the other questions presented in the record.

Judgment reversed and issue directed to be set aside, costs to be paid by appellee.