Stern et al., Liquidating Trustees,
Appellants, *v.* Gorson.

Argued April 17, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*H. Leon Bennett,* with him *Milton Berger,* for appellants.

*M. B. Elwert,* with him *Samuel W. Salus,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 21, 1934:

This bill in equity was brought by the plaintiffs as liquidating trustees of a building and loan association against defendant to recover the sum of $4,000, which he had obtained as a stock loan from the association in which he was a stockholder. It was alleged in the bill that defendant in obtaining the loan had been given an

unfair and unlawful preference over the other share-holders. After lengthy hearings before the chancellor, in which much testimony was taken, he dismissed the bill. His action was approved by the court in banc and from the final decree plaintiffs bring this appeal.

The difficulty in which appellants find themselves grows out of the circumstance that their case was largely built upon allegations which they could not support by testimony convincing to the chancellor. They charged that the association was insolvent at the time the loan was made. The chancellor found otherwise. They asserted that the defendant was the virtual manager of the association and that through his control he had favored himself, but this was not established to the satisfaction of the court. Broadly, they alleged that what the defendant did amounted to a fraud on the other shareholders. The chancellor, after full hearing, and the court in banc found there was no fraud. Appellants' counsel seem in some respects at least to have misapprehended our function in reviewing the case. One of the grounds on which he seeks reversal is that the testimony of a brother of the defendant was false. We do not pass upon the credibility of witnesses; they are seen and heard by the court below. That is its function, not ours.

Stated in the briefest way, the following are the material findings of fact by the chancellor, which are supported by testimony: Defendant was a stockholder in the building association, holding thirty shares. He had paid to it $4,435. Deducting arrears, his contributions amounted to $4,200. The eighteenth series in which he held twenty-five shares had been matured by resolution of the directors in June, 1929. Payments, however, had not been made on these matured shares, since the directors, owing to the disturbed financial condition, deemed it unwise to do so. On February 4, 1930, the defendant made a request to the board for a stock loan to the extent that he was entitled and the directors ordered him to take the matter up with the secretary. The secretary re-

ported that he was entitled to a loan of $4,000. It was arranged by the secretary and the defendant that the money should be paid in installments. In this way the loan was made and the defendant gave his notes to the association for the amounts as the sums were paid over to him.

Prior to the ending of the fiscal year of the association on May 6, 1930, the secretary notified defendant that dues and interest on $2,000 of the stock loan would be three months in arrears at the May meeting, and that, in the event that dues and interest were not paid at that time, the association would cancel his shares and apply to the loan the amount due on the stock. A like notice was given to all borrowers from the association. At the May meeting the secretary did cancel out a large number of shares of various borrowers and applied the value of their stock to their indebtedness. In September the association cancelled the stock of defendant without his request and applied the cancellation value to his notes, which were thus paid, and his obligations returned to him. Upon cancellation of his stock the sum credited to the defendant was the amount which he had paid in as dues less deductions of interest, fines and arrears. No allowance was made for profits. The making of the stock loan to defendant, the issuance of the checks to him and the cancellation of his stock are all noted in the books of the association. The practice and procedure followed in the granting of the loan to defendant, as well as the course pursued in appropriating and cancelling his stock, were the same as those adopted in granting other stock loan applications made the same day and subsequent thereto. One of the complainants, Milton Stern, who was a stockholder in the association, cancelled his stock out the same day that defendant applied for his loan, receiving in cash the amount of money paid in by him as dues, and the wife of another complainant, Arthur S. Krocker, cancelled out her stock through the agency of her husband in June, 1930, likewise receiving

the full amount paid in by her as dues. In cancelling stock and appropriating the proceeds thereof to the indebtedness of borrowers for more than a year after respondent's stock was cancelled and his notes returned, the plaintiff association allowed the full amount of dues paid in on the stock against the indebtedness of the borrowers.

With figures to demonstrate the correctness of his conclusion based upon the report of certified accountants, examinations of the banking department and real estate appraisements made by its experts, the chancellor found the association was solvent at the time of the loan made to defendant, and that it was solvent when it cancelled his stock. It carried on business for about a year after the loan to defendant was made.

In view of these findings by the trial court, we could not overturn its decree. The case was peculiarly one for determination by the chancellor and the court in banc. The findings made by the one and approved by the other are conclusive upon us, since there was adequate evidence to support them: Belmont Laboratories, Inc., v. Heist, 300 Pa. 542; Bishoff v. Valley Dairy Co., 302 Pa. 125; Hillegass, Trustee, v. Warren & Co., 313 Pa. 394.

The decree of the court below is affirmed at appellants' cost.