Pearlman, Appellant, *v.* Newburger et al.

Argued March 13, 1935.

Before KELLER, P. J. CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHOADS, JJ.

*Samuel A. Goldberg,* of *Wolf, Block, Schorr & Solis-Cohen* for appellant.

*John P. Connelly,* for appellees.

OPINION BY STADTFELD, J., April 15, 1935:

This is an action in assumpsit by Martin M. Pearlman against Frank L. Newburger et al., trading as Newburger, Henderson and Loeb, instituted in the Court of Common Pleas No. 4 of Philadelphia County. Plaintiff, in the statement filed, claimed $33,323.61 with interest, to which defendants filed an affidavit of defense and counter-claim in the sum of $4,302.85, subsequently reduced by stipulation to $2,181.10, with interest. Plaintiff filed a reply to the counter-claim. Subsequently defendants filed two supplemental affidavits of defense.

The case was called for trial January 11, 1934, before McDEVITT, J., and was proceeded with in due course as a trial before a jury. Shortly before the termination of the trial, counsel agreed to have it decided by the court without a jury, in accordance with the provisions of the Act of April 22, 1874, P. L. 109, setting forth the procedure for such trials, and subsequently a written stipulation to that effect was filed. The trial was concluded on January 12, 1934, and the stenographic notes were filed on January 29, 1934. Subsequently, on April 24, 1934, the court filed its findings of fact, discussion and conclusions of law. The court's decision was in favor of defendants, not only as to the plaintiff's claim but also as to the defendant's counter-claim, and the court found for the defendants in the sum of $2,217.31.

Subsequently the plaintiff appellant filed a motion and reasons to strike off the findings of fact, conclusions and discussion, on the ground that they were not filed within sixty days after the termination of the trial, and also filed exceptions to the various findings of fact, conclusions of law and the adjudication, and

the answers of the court to the points submitted by counsel. After argument on that motion and the exceptions before the court in banc, the court dismissed the exceptions and overruled the motion on June 16, 1934. Judgment was entered on the findings of the court in favor of defendant appellees in the amount of the counter-claim, $2,217.31. From that judgment this appeal was taken. Thereafter on October 2, 1934, the lower court filed a formal per curiam opinion approving the findings of fact and conclusions of law stated by the trial judge.

Plaintiff, Martin M. Pearlman, is a resident of the city of Philadelphia. Defendants are co-partners, trading as Newburger, Henderson and Loeb, engaged, in the same city, as stock and bond brokers. Appellant plaintiff had for several years carried a margin account with the defendants.

On June 6, 1922, an agreement had been executed by plaintiff and delivered to defendants, in the form following: "Messrs. Newburger, Henderson & Loeb, In consideration of your acting as brokers for the undersigned, it is hereby agreed that all stocks, bonds, securities or other evidences of debt carried in said account, or deposited to secure the same, now or in the future, may be carried in your general loans, and may be pledged or loaned by you either to yourselves or to others, separately or in common with other stocks or securities, and either for the sum due to you thereon or for a greater sum, all without notice to the undersigned, and irrespective of the kind or amount of other stocks or securities retained by you in your possession and subject to your control, and that they may also be sold or bought, at public or private sale, or at the New York or Philadelphia Stock Exchanges, without notice or demand for margins, when such sale or purchase is deemed necessary by you for your protection, and that contracts may be settled by you in

accordance with the rules and customs of the New York or Philadelphia Stock Exchange.

"This agreement shall be deemed to apply to all stocks or securities heretofore or hereafter carried or deposited in said account. Dated 6-22 1922. Signature M. M. Pearlman."

For a long time prior to October 21, 1929, appellant had a very large account with appellees. The market had been falling. By letter of October 18, 1929, the appellees demanded additional collateral or selling orders since the account required $300,000 to make up the proper margin. The plaintiff was unable to deposit additional collateral.

The trial judge, in the opinion filed, found, inter alia, that the agreement aforesaid was the basis of the dealings between the parties; that there was no contract entered into between the plaintiff and the defendants on October 21, 1929, to sell the entire account of the plaintiff and that there was no consideration for such an alleged contract; that selling orders were given by the plaintiff to the defendants on October 18, 19 and on October 21, 1929, on the last date beginning at 9:30 A. M., down to and including 2:30 of the same day; that all of these selling orders were ratified and confirmed by the said plaintiff; that confirmation notices were sent covering these various selling orders from October 18, 1929, down to and including October 21, 1929, and received by the plaintiff; that no complaint was made by the plaintiff as to these transactions until November 8, 1929; that plaintiff by his conduct ratified and confirmed all that was done by the defendants in this case; that under all the evidence in the case the verdict is for the defendants in the amount of the counter-claim, $2,217.31.

The findings of the trial judge, when confirmed by the court in banc, have the effect of a jury's verdict, and will not be disturbed on appeal if the record dis-

closes sufficient evidence or reasonable inferences therefrom to sustain them: Hillegass, Trustee, v. Warren, 313 Pa. 394, 169 A. 754; Stern et al., Liquidating Trustees, v. Gorson, 315 Pa. 315, 172 A. 720. We must accordingly turn to the record to ascertain the basis of the trial judge's findings.

The plaintiff claimed that one Lester Degenstein, an employee of the defendants, generally known as the customer's man, and with whom plaintiff always dealt, called him on the telephone on October 21, 1929, between 10:30 and 11:00 o'clock, A. M., and told him "that Mr. Frank Newburger had told him to call me immediately and wanted me to put up $400,000—I said to him, 'Lester, there is still considerable equity in the account.' He said, 'Well, the market is dropping and Mr. Newburger is very much disturbed because he says he has got to protect himself and we have got to have this money or we will have to sell the account.' 'But,' he said, 'You can talk to Mr. Newburger yourself, and maybe whatever you arrange with him it will be all right.' I said to him, 'Lester, I don't want to talk to Frank Newburger. I said, you give Frank his message. You tell him to sell everything I have in my account and clean out all the accounts that I have guaranteed and that will protect him.' That was the morning of the 21st. He (Degenstein) said 'all right.' "

In support of this alleged instruction "to sell everything," plaintiff offered in evidence a letter from defendants to one Irving M. Filmore, a son-in-law of plaintiff, and whose account plaintiff had guaranteed, dated January 3, 1930, in which defendants state "...... beg to advise that your account as presented was guaranteed by Mr. M. M. Pearlman, and acting under the instructions of Mr. Pearlman, in which he stated to us to liquidate the accounts in which he had

interest, the one hundred shares of United States Gas Improvement Company stock was sold etc. . . . . . ."

Appellant also relies upon the testimony of Degenstein wherein the latter stated that on October 21, 1929, Pearlman told him: "Lester, I am all tied up and am in no position to give you any collateral now. Tell Frank (meaning Mr. Newburger) to protect himself because I don't want to be in a position of having to owe you any money."

It was agreed during the trial, that the value of the securities unsold on October 21, 1929, after the sales made by defendants, after deducting commissions and taxes which defendants would have been entitled to deduct if they had sold the stock, would have been $53,998, against which there was a total debit balance, including interest, and allowing credit on another transaction, of $26,425, leaving a net credit balance of $27,563.

On behalf of defendant, Degenstein testified that from October 15, 1929, he was in constant contact with plaintiff by telephone, that he called the plaintiff as many as 10, 12 or 15 times, and that plaintiff occasionally would drop into the defendants' office; that on October 18, 1929, demand was made in writing to put up $300,000 as additional collateral, and that the latter was sent to plaintiff's office at the Jefferson Building, 1500 Chestnut Street, Philadelphia, where all communications were sent; that on October 21, 1929, at about 9:30 A. M., he had a conversation with the plaintiff in relation to the market and to the putting up of collateral for the protection of plaintiff's account, at which time he, Degenstein, received selling orders from the plaintiff from the latter's home in Germantown; that he thereupon wrote out the selling slips and they were transmitted in the usual way; that after the same were executed the plaintiff was informed thereof by telephone; that on or about eleven

o'clock on the morning of October 21, 1929; plaintiff and Degenstein again discussed the condition of the market, and additional orders were given to sell stocks belonging to plaintiff and some in Leo J. Murphy's account, which account was guaranteed by plaintiff; that at about 2:00 o'clock of the same day, plaintiff's account was still in bad condition, and further orders to sell were given by him over the telephone from his office in Philadelphia; that about 2:30 P. M. of the same day, he called plaintiff at his place of business and told him that his account was still under-margined, and that it would require additional margin or collateral and would have to be put up that afternoon, and the plaintiff said he was all tied up and he told the witness to tell Mr. Newburger to sell enough securities to protect himself; that selling orders were given at that time by plaintiff, and were duly carried out; that after the selling orders had been executed, plaintiff's account was properly margined. Degenstein specifically denied that the plaintiff ever gave him selling orders to sell the entire account, and testified that he had a conversation with plaintiff the next morning, October 22, 1929 at about 11 o'clock, and that plaintiff made no complaint that his account had not been closed out on the day before. He also testified to a conversation with plaintiff on October 28, 1929, at the latter's home at about eleven or eleven-thirty o'clock, in which plaintiff asked him what was left in his account; that Degenstein then gave him a statement of the securities left in the account, and that the plaintiff then said "that since there are so few of the securities left in the account we might as well hold them and see if we cannot better the price;" that at this time plaintiff made no complaint that the account had not been sold out on October 21, 1929; that the next conversation with plaintiff was on November 7th or November 8th, when plaintiff came to the offices of

the firm, and that this was the first time that plaintiff made a complaint as to the transaction. Plaintiff did not deny any of the statements made by Degenstein as to the selling orders given by the plaintiff on October 18th and 19th and October 21, 1929, and the various hours and times as testified to by Degenstein and the nature and character of the stock and the confirmation thereof. It was admitted during the trial that confirmation notices of sale were sent to Mr. Pearlman on the 18th and 19th of October, 1929, and also on the 21st day of October, 1929.

As correctly stated on behalf of appellant, the whole issue in this case is as to the instructions from the appellant to appellees.

On behalf of appellant the testimony is that appellees were instructed to "sell everything," to "liquidate" the accounts. On behalf of appellees the testimony is that appellant instructed appellees to "sell enough securities to protect themselves."

The giving of separate instructions to sell specific securities would seem to be unnecessary if general instructions to sell out the entire account had been given as claimed.

As stated by the Supreme Court, in Stern v. Gorson, supra, it is the function of the lower court and not of the appellate court to pass upon the credibility of witnesses.

We do not, taking the entire testimony into consideration, believe that the term "liquidate" relied upon by appellant, contemplated the closing out of the entire account. Nor do we think that the alleged statement by plaintiff that he did not wish to be "owing any money to defendants" implied that the entire account should be closed out. All that appellees demanded was that the account should be properly margined; what appellant desired was to liquidate sufficiently to pay off appellees.

Appellant contends that the trial judge made no

finding on the question whether appellant instructed the defendants to sell everything in his account. We believe that the refusal of the 4th point ex parte plaintiff appellant, embodying this question, was equivalent to a finding that no such instructions had been given.

In view of our conclusion supra, it is not necessary to pass upon the question whether any consideration was necessary to make effective as a contract an instruction to sell all the securities in the account.

We think that there is sufficient legally competent testimony to support the findings of the trial judge, and the entry of judgment thereon.

Appellant contends that the provisions of the Act of 1874, P. L. 109, 12 PS 688, and its supplements, governing trials by a judge without a jury, make it mandatory that the decision be rendered within sixty days after the termination of the trial. In the instant case, the trial was concluded on January 12, 1934, and the stenographic notes were filed on January 29, 1934. Subsequently on April 24, 1934, the court filed its findings and conclusions, 102 days after the conclusion of the trial. The court overruled the motion to strike off the same.

The act provides in Section 2 thereof (12 PS 689): "The decision of the court shall be in writing, stating separately and distinctly the facts found, the answers to any points submitted in writing by counsel and the conclusions of law, and shall be filed in the office of the prothonotary or clerk of the proper court where the case is pending, as early as practicable, not exceeding sixty days after such decision shall have been made from the termination of the trial, and notice thereof shall be forthwith given by the prothonotary or clerk to the parties or their attorneys, and if no exceptions thereto are filed in the proper office within thirty days after service of such notice judgment shall be entered thereon by the prothonotary or clerk."

The section is poorly drawn, and it is difficult to allocate the words "from the termination of the trial" to their proper connection, in view of the provision that "The decision of the court shall be in writing ....... and shall be filed in the office of the prothonotary or clerk of the proper court ...... as early as practicable, *not exceeding sixty days after such decision shall have been made ......*"

Irrespective of what may be the proper construction of this section, we believe that this provision is directory only. Otherwise all the time consumed in the trial of a case would be for naught by reason of a failure to file the decision within sixty days from the termination of the trial, irrespective of the cause for delay. Such certainly was never the intention of the Legislature. In addition, it appeared at bar at the time of the argument of this case, and is so set forth in appellee's brief, that at the time that it was agreed to refer the matter to Judge McDevitt, the latter stated that he was ill, and that he was going into an hospital for an operation, and he wanted counsel to understand the situation, and counsel for both parties agreed to await the convenience of the judge. It does not appear that any time prior to the filing of the decision, any complaint was made as to delay. The circumstances certainly excuse the delay.

As to the counter-claim a different question presents itself. Plaintiff's suit was entered February 26, 1930. The counter-claim of defendant arises out of the sale of certain securities in July, 1930, in that the sale of the securities did not realize sufficient to pay what the appellees claim was the continuing debit balance of the appellant. Assuming the claim was a proper one, it was not ripe for action at the time of the entry of this suit. It was therefore not the proper subject-matter of a set-off or counter-claim, and the court erred in entering judgment thereon. See Roig v. Tim, 103 Pa. 115; Gunnis, Barritt & Co. v. Cluff, 111 Pa.

512, 4 A. 920; Russ v. Sadler, 197 Pa. 51, 46 A. 903; Condran v. Kennedy, 56 Pa. Superior Ct. 356.

Assignments of error Nos. 11 and 20 are sustained, and the judgment in favor of appellees on the set-off or counter-claim is reversed without prejudice. All the other assignments of error are overruled and the judgment in favor of appellees on appellant's claim is affirmed.