## Griffith Will.

Argued January 8, 1948. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Ashton Locke Worrall,* for appellants.

*Joseph V. McEnery,* for Joseph R. Palermo, appellee.

*Harry J. Alker, Jr.,* for D. R. Griffith, Jr., appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1948:

This is an appeal from a decree of an orphans' court in an issue *devisavit vel non,* sustaining the validity of a second codicil to the will of a decedent. The will and first codicil were probated and are not contested. The disputed second codicil appoints a brother and a former employee (appellees) as executors and trustees in the place of decedent's attorney and friend (appellant). The sole issue is the validity of the disputed codicil, the determination of which decides who are the executors and trustees of decedent's will.

The register of wills certified the proceeding to the orphans' court as "a difficult and disputable question" as provided by the Register of Wills Act of June 7, 1917, P. L. 415, section 19, 20 PS, 1982. The orphans' court, the late Judge McDonough specially presiding, determined that there existed a substantial issue of fact. An issue *devisavit vel non* was awarded to determine four questions (1) Was the disputed document executed by decedent? (2) At .the time of the execution was [decedent] of sound and disposing mind, memory and understanding? (3) Was the execution of the instrument produced by, or the result of, undue influence exerted upon the testator at the time of the making thereof? (4) Does the manner in which the instrument was executed satisfy the provisions of the Act of As-

sembly with respect to the execution of the same? It was decreed that the issue was to be tried by a jury in the orphans' court under the Act of July 1, 1937, P. L. 2665, as amended by the Act of May 5, 1939, P. L. 94, 20 PS, 2585. No appeal was taken from the grant of the issue.

It was thereafter agreed by counsel that the case should be tried by a judge without a jury in the orphans' court. This is authorized by the Act of April 22, 1874, P. L. 109, 12 PS, 688. See also Act of June 25, 1937, P. L. 2090, 12 PS, 695. Pursuant to such agreement the case was heard in the orphans' court by Judge DANNEHOWER, specially presiding.

The hearing judge found that the disputed document was executed by decedent; that at the time of the execution decedent possessed testamentary capacity and that its execution was *not* procured through undue influence. The hearing judge also resolved the question of law (improperly certified as a question of fact) in favor of proponents, i. e., that the disputed codicil was validly executed. Sixty-three exceptions were taken to these findings of fact and conclusions of law, all of which, except one, were dismissed by the court in banc. This appeal followed.

Robert M. Griffith, the decedent, died on April 30, 1944, at the age of 75 years; he was survived by a widow, his third wife, with whom he had made an antenuptial agreement or settlement. He was also survived by a daughter, a child of the first marriage, whom he disinherited by the 23rd clause of the will. Decedent had been engaged in the cotton yarn business in Philadelphia, but had retired in 1937; he continued to visit his office several times a week until June 1941; his estate was estimated at approximately $400,000; by his elaborate testamentary scheme, dated December 23, 1948, he made provision for his widow in accordance with the terms of the antenuptial agreement and made bequests to brothers (including David R. Griffith, Jr., one of the appellees) and other relatives and friends and for chari-

table and religious uses; he appointed Ashton Locke Worrall (appellant) executor and trustee. By a codicil dated December 19, 1940, decedent bequeathed to Joseph R. Palermo (an appellee) the sum of $1,000.

The questioned or contested codicil bears date March 2, 1941. By it the appointment of Mr. Worrall as executor and trustee is revoked and in his place and stead are substituted decedent's brother, David R. Griffith, Jr. and decedent's friend and employee, Joseph R. Pauumbo.

Appellee Palermo testified that at decedent's direction he had called at the office of Mr. Worrall (appellant) about February 10th or 12th, 1941, and told Mr. Worrall that the decedent had asked the witness to tell Mr. Worrall decedent desired to change his will so as to make Palermo a co-executor with Mr. Worrall. He testified that Mr. Worrall had stated that if decedent wanted that done the decedent must give Mr. Worrall personal direction to that effect. In Mr. Worrall's presence, and with his permission, Palermo then telephoned decedent, advising him of Mr. Worrall's statement, and received instructions to return to decedent's office. Upon returning to the office, at decedent's request, Mr. Palermo telephoned David R. Griffith, Jr., a lawyer and brother of decedent, and informed him that decedent desired to see him. Within a day or two thereafter, appellee David Griffith called at decedent's office and in Mr. Palermo's presence was told by decedent that he wished to change his will by substituting Mr. Griffith and Mr. Palermo as the executors. Mr. Griffith thereupon prepared the disputed document in decedent's office on ·his billing machine. David Griffith testified that he wrote the disputed paper *as a form* to show his brother what a codicil would look like; that the co-fiduciary's name was incorrectly spelled *Pauumbo* instead of *Palermo;* that decedent handed the paper back to Mr. Griffith and asked him: "Where did you get that spelling from?" David Griffith testified that he informed decedent he would prepare a new codicil, free from errors, on Mr. Griffith's

own typewriter; that on or about March 1941, David Griffith prepared a codicil (original and carbon copy) in his own office, containing in substance the same provisions as in the disputed codicil and took it to decedent at the decedent's office where the original was duly executed in the presence of subscribing witnesses Riley and Hughes. This executed codicil has not been found since the decedent's death, nor has the carbon copy.

On December 19, 1941, David Griffith filed a petition to have the decedent declared an incompetent. After a hearing the court decreed that the decedent was unable to care for his property, and on January 28, 1942, a trust company and the wife were appointed guardians of his estate.

Mr. Palermo and Mr. Griffith testified that in clearing out decedent's desk in January or February 1942, after the appointment of guardians, Mr. Palermo found the disputed paper in a compartment of decedent's desk. It bore the name of the decedent written in lead pencil and was dated March 2, 1941. Both testified that Mr. Palermo delivered the document to the appellee, David Griffith, who was present at that time. David Griffith placed the document in an envelope and retained possession thereof until the death of the decedent, when it was presented for probate.

The evidence established that decedent had executed and delivered to Palermo and Griffith letters of attorney, one on April 16, 1941 to draw checks and the other on May 14, 1941 to have access to decedent's safe deposit box; that on August 14, 1941, decedent also gave his wife a general letter of attorney. It was testified that the will, first codicil and the executed witnessed second codicil were put in an envelope by decedent and placed in his safe deposit box. Mr. Palermo testified that at decedent's instruction he had written on the envelope "superseded by a new codicil and last will and testament" with the date 3-14-41 and the name Robert M. Griffith. The contents of the box were removed by the

guardians on February 2, 1942. The empty envelope with endorsement was found but not the testamentary papers.

The widow testified that decedent had given her both copies of the antenuptial agreement and the will in June 1941 for "safe keeping."

The hearing judge found that the signature to the disputed codicil of March 2, 1941, was in the handwriting of the decedent. He also found, from the medical and lay testimony, that decedent at the time of the execution of the questioned writing was of sound and disposing mind, memory and understanding. It was also found that the execution of the codicil was neither procured by, nor was the result of, undue influence exerted upon the decedent at the time of the execution thereof.

We have repeatedly defined the function of a trial judge when presiding at a jury trial in a will contest. In *Lare Will,* 352 Pa. 323, 334, 42 A. 2d 801, it was said: " '. . . The trial judge, who sits to determine an issue devisavit vel non, acts as a chancellor. He is not bound by a verdict when it is against the manifest weight of the evidence, which is addressed to him quite as much as to the jury. If his professional and official conscience is not satisfied that it is sufficient to sustain a verdict against the will, either because it lacks probative force or inadequacy, it becomes his duty to set the verdict aside: Kustus v. Hager, 269 Pa. 103; Keller v. Lawson, 261 Pa. 489; Englert v. Englert, 198 Pa. 326': Brehony, Exr., v. Brehony, 289 Pa. 267, 270, 137 A. 260. See also: Guar. T. & S. D. Co. v. Heidenreich, supra; Buhan v. Keslar, 328 Pa. 312, 194 A. 917."

Conversely, a verdict sustaining the will must stand where the hearing judge's professional and judicial conscience is satisfied that there is not sufficient evidence to support a verdict against it. In the instant case the hearing judge, as chancellor, was constituted both judge and jury by agreement of the parties. His findings of fact, therefore, have the same force and effect as a ver-

dict of a jury, approved by the trial judge. While there was contradictory evidence as to whether the disputed codicil was executed by decedent or was a forgery, and whether at the time of the execution decedent possessed testamentary capacity, the findings of fact that decedent did execute the writing and possessed testamentary capacity are supported by sufficient competent evidence and are affirmed by the court in banc. They must, therefore, be accepted as correct and are binding on appeal. *Cross's Estate*, 278 Pa. 170, 184, 122 A. 267; *Lare Will*, supra. There was no proof submitted concerning the exertion of undue influence. That allegation must therefore be disregarded.

The agreement of the parties that the issue should be tried by a judge, without a jury, is authorized by the Act of April 22, 1874, P. L. 109, 12 PS, 688, 689. The Act provides *that the decision shall be filed within sixty days after trial.* Appellant contends that this provision is *mandatory.* The hearing was concluded January 16, 1946 and the court's decision was filed March 26, 1947, a period of one year and two months. Appellant maintains that the decision was therefore a nullity. This Court, however, decided that this provision is *directory.* In *Socialist Labor Case*, 332 Pa. 78, 81, 1 A. 2d 831, Chief Justice KEPHART, quoting from *Pearlman v. Newburger et al.*, 117 Pa. Superior Ct. 328, 178 A. 402, said: ". . . In Pearlman v. Newburger et al., 117 Pa. Superior Ct. 328, the provision of the Act of April 22, 1874, P. L. 109, governing trials without jury, that the decision of the court 'shall be filed . . . as early as practicable, not exceeding sixty days after such decision shall have been made from the termination of the trial,' was held to be directory. In that case the decision was filed more than sixty days after the end of the trial because of the illness of the presiding judge. The court said at page 338: 'Irrespective of what may be the proper construction of this section, we believe that this provision is directory only. Otherwise all the time con-

sumed in the trial of the case would be for naught by reason of a failure to file the decision within sixty days from the termination of the trial, irrespective of the cause for delay. Such certainly was never the intention of the legislature.' "

See also *Shenker v. Harr, Treasurer, et al.*, 332 Pa. 382, 2 A. 2d 298; *Morrison v. Unemployment Compensation Board of Review*, 141 Pa. Superior Ct. 256, 15 A. 2d 391. A decree and judgment will not be set aside merely for a violation of a *directory* statutory provision.

The fourth question submitted in the award of the issue *devisavit vel non* reads as follows: "4. Does the manner in which the instrument was executed satisfy the provisions of the Act of Assembly with respect to the execution of the same?"

This is a matter of law and not a question of fact and was so regarded by the court below. The court decided that the disputed paper had been validly executed under the provisions of section 2 of the Wills Act of June 7, 1917, P. L. 403, 20 PS, 191. The pivotal question is whether this paper was "signed at the end thereof" as required by the statute.

This paper was signed by decedent at the conclusion of his testamentary direction which substituted David Griffith and Joseph Palermo as executors and trustees in the place of Mr. Worrall. Following the signature is a dated (March 2, 1941), unsigned testimonium clause and an unsigned attestation clause. There were no subscribing or attesting witnesses. Appellant contends that such an execution is in violation of the statute and is therefore void.

Section 2 of the Wills Act, supra, provides: "Every will . . . shall be signed . . . at the end thereof." There is a proviso to this section, however, which reads as follows: ". . . *Provided*, That the presence of dispositive or testamentary words or directions, or the appointment of an executor, or the like, after the signature to a will, whether written before or after the execution

thereof, shall not invalidate that which precedes the signature."

There were no dispositive or testamentary words or directions or appointment of executors following the signature. All that follows are the unsigned testimonium and attestation clauses. Such words, in such circumstances, are without effect and, in conformity with the precise words of the statute, do "not invalidate that which precedes the signature:" *Beaumont's Estate,* 216 Pa. 350, 65 A. 799; *Rouzer's Estate,* 267 Pa. 323, A. 176.

*Churchill's Estate,* 260 Pa. 94, 103 A. 533, relied upon by appellant, is inapposite. In that case testator wrote his will by filling in a blank printed form in his own handwriting. He wrote his name in three blank spaces in the paper, first at the top, then in the testimonium clause and then in the attestation clause. He did not *sign* his name at the end of the paper. It is apparent that in writing his name in the three blank spaces in the form, decedent did not intend his name *as a signature.* A writing in of a name, in those circumstances, was not a signature and did not constitute an execution of a will in conformity with section 6 of the Act of April 8, 1833, P. L. 249, re-enacted by section 2 of the Wills Act of 1917, supra. This Court has repeatedly said that the end of the will is the logical end of the disposition in its obvious inherent sense. The place chosen by this decedent to affix his signature was at the point where the appointment of his executors and trustees was consummated. It was at the logical and sequential end of the instrument although not at the physical or spatial end. *Brown Estate,* 347 Pa. 244, 32 A. 2d 22; *Coyne Will,* 349 Pa. 331, 37 A. 2d 509; *Brown, Admr., v. Monaca Federal Savings and Loan Association,* 352 Pa. 1, 42 A. 2d 50; *Baldwin Will,* 357 Pa. 432.

The court in banc sustained appellant's 25th exception to the hearing judge's findings of fact and found as a fact: "24. In the upper left hand corner of the dis-

puted codicil there were the impressions in the paper of the word "copy" and initials "R.M.G." which had been erased from the paper."

With the aid of a magnifying glass, it was established that the word "copy" and the initials "R.M.G." had at some time been written in the upper left hand corner but had been erased. These words formed no part of decedent's testamentary dispositions. A handwriting expert testified that the impress of the word "copy" was in the handwriting of Mr. Palermo. It was not maintained that decedent had written the word copy or the initials. It was not affirmatively established who wrote the words or who had erased them. The alteration— writing and its erasure—was immaterial. If made by Mr. Palermo, it was made by a stranger. If made by decedent, the result would be the same. Being an immaterial alteration, the validity of the instrument would not be affected: *Grubbs et al. v. McDonald et al.*, 91 Pa. 236; *Dugacki Will*, 356 Pa. 143, 150, 51 A. 2d 627.

Appellant contends, however, that such an addition, in the circumstances of this case, constitutes a *material* alteration. Great reliance is placed upon *Bates's Estate*, 286 Pa. 583, 134 A. 513. We decided in that case that where a testator executes his will in duplicate, retaining the original, and at his death the will cannot be found, the presumption is that he intentionally destroyed the paper and, in the absence of proof to the contrary, the executed duplicate is also revoked. See *Ford's Estate*, 301 Pa. 183, 187, 151 A. 789.

In the instant case, unlike the testamentary documents in *Bates's Estate* and *Ford's Estate*, supra, the disputed codicil was NOT a carbon copy or even an exact copy of an original paper. It, itself, was an original, typed on the billing machine. Even though decedent, or a stranger, marked such a paper "copy", nonetheless, it was a probatable document. In *Dawson's Estate*, 277 Pa. 168, 120 A. 828, we held that an executed duplicate

will marked "copy" was probatable where the facts clearly disclosed no intention of revoking any of the duplicates; that the word "copy" was mere surplusage.

The decree and judgment are affirmed. Costs to be paid out of the principal of the estate.