**Oler COPLIN, Plaintiff In Error,**

**v.**

**Susie ANDERSON, Defendant In Error.**

**No. 36171.**

Supreme Court of Oklahoma.

Feb. 8, 1955.

Rehearing Denied March 22, 1955.

Arnett & LeForce, Geo. T. Arnett, Ed R. LeForce, Idabel, for plaintiff in error.

Paul Harkey, Idabel, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an instrument represented to be the will of one Grady Coplin, executed while he was a member of the United States Armed Forces, on July 1, 1950, and was stationed in Japan. It is on a mimeographed form prepared by the Army and distributed to Coplin and three other Army cooks who signed it as attesting witnesses. At that time, these men were alerted for service in Korea, during which service Coplin was, a short time later, killed in action.

The county court admitted the instrument to probate as Coplin's last will and testament, on the petition of his mother, hereinafter referred to as proponent, and over the objections of Coplin's father, proponent's divorced husband, hereinafter referred to as contestant. Upon contestant's appeal to the district court, that court also sustained the document as Coplin's will and as such entitled to admission to probate.

In contestant's present appeal from the latter judgment the only question to be determined is whether or not the document was subscribed by the deceased soldier and purported testator "at the end thereof" as required by Tit. 84 O.S.1951 § 55; there

being no question concerning its attestation or any other matter affecting its validity, if it was so subscribed. The complete document, with the words and figures left blank in the mimeographed form being written in by Coplin himself, is as follows:

"I, Grady Coplin, a permanent legal resident of Broken Bow, Okla., now in active military service in the Army of the United States (Army Serial No. RA6574860), being of sound and disposing mind and memory, do hereby declare this to be my last will and testament, hereby revoking all former wills and testamentary dispositions by me made.

"1. I direct that my just debts and the expenses of my last illness and funeral expenses be paid in full.

"2. I give, devise and bequeath all of my property, real and personal of every kind whatsoever, and wherever the same may be situated, now owned or that may hereafter be acquired, to my beloved ~~wife~~, Mother Mrs. Susie Anderson Broken Bow, Okla.

"3. In the event my ~~wife~~, Mother shall predecease me, I give, devise and bequeath all of my property, real and personal of every kind whatsoever, and wherever situated, now owned or that may hereafter be acquired to my Sister: Mrs. Gladys Sharrer, Broken Bow, Okla.

"4. I hereby nominate and appoint my, ~~wife~~ Mother as executrix of this my last will and testament and direct that she be not required to furnish any bonds whatsoever in the performance of her duty as executrix; and if a bond is nevertheless required, I direct that she be exempt from giving any surety or sureties thereon.

"In witness whereof, I have hereunto subscribed my name this 1st day of July 1950, in the City of Sasebo Kyushu, Japan.
"_____

"The foregoing instrument was signed, published and declared by the said Testator Grady Coplin, to be his last will and testament, in the presence of us and each of us, and who at his request and in his presence and in the presence of each other have hereunto subscribed our names as attesting witnesses thereto this 1st day of July 1950, in the City of Sasebo, Kyushu, Japan.

Hector P. Rosa        of N. Y. C.—N. Y.
Stanley W. Matras     of Pennsylvania
Albert J. Krivda      of Pennsylvania."

Proponent contends that Coplin's writing of his name by his own hand in the above portrayed attestation clause, in exactly the same way he ordinarily signed it, and in the presence of attesting witnesses, constituted a substantial and sufficient compliance with the statute, supra; while contestant contends that this signature was not sufficient, because it was not "at the end" of the will within the meaning of that term as used in the statute.

There is a recognized conflict of opinion on this question. See 57 Am.Jur. "Wills", Sec. 275, and the authorities cited in the notes thereto. Pertinent to the matter, most courts, like our own, recognize that the attestation clause is not a part of the will proper. See Ward v. Board of Com'rs of Logan County, 12 Okl. 267, 70 P. 378; Graham v. Tucker, Ohio App., 47 N.E.2d 801. Thus in the case of In re Stinson's Estate, 228 Pa. 475, 77 A. 807, 808, 30 L.R.A.,N.S., 1173, it was said:

"A will is the legal declaration of a man's intention which he wills to be performed after his death. Such declaration must, under our wills act, be in writing and signed at the end thereof by the testator, unless prevented by an absolute inability. His written declaration is his animus testandi. When it is fully expressed, his will is finished, and the end of it reached. It is there that his signature must appear as evidence that it is his will. What he regards as the end of his will, and what must manifestly be regarded as the end of it, from an inspection and reading of the writing, is the end of it under the statute, which contains nothing about the spatial or physical end of it."

If, under the above view, it is proper to construe "the end" of a will as the end of the testamentary dispositions therein contained, then it would seem that the signature of the testator immediately below such end would be sufficient to comply with such wording in a statute like Section 55, supra, and that if the attestation clause is not essential to the validity of the will, then such signing could be considered a subscription of the will, without reference to, or in disregard of, the fact that it appears in such clause, rather than on a separate line by itself; especially where it appears, as here, that the testator thought he was subscribing to the will by placing his signature at that place, and intended it as a subscription of the will. At least that would appear to have been the view of the Pennsylvania Court in the earlier case of In re Swire's Estate, 225 Pa. 188, 73 A. 1110, which held:

"The statutory requirement that a will be signed 'at the end thereof' means the logical end of the language used, which shows that the testamentary purpose has been fully expressed, and the position of the signature with regard to the bottom or end of the page is only evidence whether testator has completed the expression of his intention.

"The continuity of sense, and not the mere position on the page, must determine the statutory 'end thereof' as the place for the signature, where it is manifest that the full substance of testatrix's intent is expressed, and the signature is at what she intended and regarded as the end of her will."

See also the annotator's comments on said case in the Annotations to Mader v. Apple, 80 Ohio St. 691, 89 N.E. 37, 23 L.R.A.,N.S., 515.

In the case of In re Churchill's Estate, 260 Pa. 94, 103 A. 533, where portions of the will involved closely resemble the present one, except that there the testator tore off the lower end of the first sheet and wrote an addition to it in his own hand, and there was no evidence as to when or where he did these things, the Pennsylvania Court, we think inconsistently, refused to follow the principles enunciated in the previous opinions above quoted and followed the holding of the Ohio Court in Sears v. Sears, 77 Ohio St. 104, 82 N.E. 1067, 1071, 17 L.R.A.,N.S., 353, 11 Ann.Cas. 1008, to the effect that the signing of the testator's name in the attestation clause cannot be considered a subscription upon reasoning that if a scrivener had prepared the will and had written the testator's name in the attestation clause, it would have been "merely descriptio personæ." We think to apply such a dogmatic and technical rule to all cases, regardless of the facts in the particular case at hand, is unwarranted, unjustified, and erroneous. In accord with the view entertained by most courts that the end of a will is the end of the testamentary dispositions there set forth, our Legislature in enacting Section 55, supra, did not intend nor purport to specify the exact line or place at such end where the signature had to appear to be competent and sufficient as a subscription; and when the testator's signature appears at such end, then the statutory requirement as to its location on the document is met. We refuse to extend the legislative mandate further than its plain wording implies and to add thereto a prohibition against such signature appearing in the attestation clause. While we recognize that parole or extrinsic evidence should not be allowed to change or add to a will, or to show that a would-be testator intended to execute his will in conformity with the statute, when in fact he did not, In re Abrams' Will, 182 Okl. 215, 77 P.2d 101; In re Seaman's Estate, 146 Cal. 455, 80 P. 700; Alexander's Commentaries on Wills, Sec. 407, we do not think that such salutary rules reach or apply to the present case. Here the testator not only subscribed his name at what he apparently thought was "the end" of the will, but in fact subscribed it at the end of his testamentary dispositions, which, as we have seen, is the equivalent of the "end of the will" within the logical and reasonable rule above referred to, and within the meaning we think was intended by our Legislature. Thus contestant's argument, taken from some of the cases, Sears v.

Sears, supra, that a will not executed as required by statute is invalid notwithstanding the intention of the testator, does not apply. As said in the much later Pennsylvania case of In re Griffith's Estate, 358 Pa. 474, 57 A.2d 893, 898, the testator's signature "was at the logical and sequential end of the instrument although not. at the physical or spatial end." See also references cited in In re Schiele's Estate, Fla., 51 So.2d 287, 290, which involved application of statutes similar to ours to a will, whose form and subscription differed in no material respect from the one here involved. We think the proper view coincides with that expressed in In re Golden's Will, 165 Misc. 205, 300 N.Y.S. 737, where the court, after recognizing that a will is not the paper on which it is written, but the words written thereon, and the end of the will is the end of those words rather than the end of the paper, cited in In re Field's Will, 204 N.Y. 448, 455, 97 N.E. 881, 883, 39 L.R.A.,N.S., 1060, Ann.Cas.1913C, 842, for the statement that: "The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common"; and the views expressed in the case of In re Chase's Estate, 51 Cal.App.2d 353, 124 P.2d 895, 900, where the court, after announcing similar views, said:

> "To reach a different conclusion would in our opinion, be unnecessarily *raising form above substance* to destroy a document that was undoubtedly the will of the testatrix." (Emphasis ours.)

The present case is distinguishable from In re Bond's Estate, 159 Kan. 249, 153 P. 2d 912, where the decedent's signature, relied upon as a subscription, was a part of the *body* of the will.

In accord with the foregoing views, the judgment of the trial court is affirmed.

JOHNSON, C. J., and WELCH, CORN, DAVISON, ARNOLD and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and HALLEY, J., dissent.

HALLEY, Justice (dissenting).

I cannot concur in the majority opinion. It is contrary to our statutory law as heretofore clearly declared by this Court. When an instrument purporting to be the will of a soldier serving in a foreign country is presented for probate it is only natural that we make every effort to give effect to any instrument that appears to disclose his intentions and desires as to the disposition of his property. This is especially true where, as here, the soldier dies in the service of his country soon after making an effort to express his desires as to the disposition of his property.

However, it is not within the province of this Court to do other than interpret and apply the law as written by the Legislature. It is well established that the right to make a will is not a natural or inherent right but a right created by and dependent upon the will of the legislative branch of the government. The Legislature of Oklahoma has prescribed certain mandatory rules and requirements that must be followed.

The applicable portions of Section 55, 84 O.S.1951, after providing that "Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested" in a certain form, then provides in subdivision (1) as follows:

> "It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto."

The above quoted subdivision is the only requirement in controversy here relative to the instrument involved. The other requirements as to the instrument being in writing, witnessed and declared to be the will of the testator are not here involved.

Since the pertinent parts of the will of Grady Coplin are copied in the majority opinion, I shall not copy the instrument here, but will refer to its form as shown in the majority opinion. After the dating clause it will be noted that there are two lines for signature below the dating clause

and above the attesting clause. In the second line of the attesting clause appears the name of the testator as follows:

"The foregoing instrument was signed, published and declared by the said testator Grady Coplin, to be his last will and testament, in the presence of us and each of us, * * *."

The appearance of "Grady Coplin" in the first line of the instrument and in the second line of the attesting clause are in the handwriting of the testator and the majority opinion holds that because Grady Coplin filled in his name on the second line of the attesting clause in the blank left in that printed form, he thereby subscribed his will at "the end thereof."

The body of the will gave the entire estate to the mother, and if she predeceased Grady Coplin, all was given to a sister. Oler Coplin, father of Grady Coplin, is the contestant. The mother was made executrix without bond. The only real issue is whether subdivision (1) of Section 55, supra, requiring that a valid will must be "subscribed at the end thereof" has been substantially complied with.

The majority opinion finds that when Grady Coplin wrote his name on the second line of the attesting clause, which follows the body of the will and is below the two lines patently intended for the signature of the testator and in the attesting clause, he complied substantially with the requirement of subscribing his will "at the end thereof." He had written his name in the first line of the printed form which began "I, Grady Coplin, etc." These printed forms had a blank space in the first line for the name of any testator who might desire to use such form. There was also a blank in the second line of the attesting clause to identify the party using such form.

One of the principal decisions relied upon by contestant is In re Abrams' Will, 182 Okl. 215, 77 P.2d 101, in which the validity of a holographic will was involved. Section 54, 84 O.S.1951, defines a holographic will as one "entirely written, dated and signed by the hand of the testator."

The Abrams' Will met the above requirements except that it bore no date and this Court held it was not entitled to probate. The proponent there relied upon the decision of this Court in In re Estate of Hail, 1923, 106 Okl. 124, 235 P. 916, in which the instrument offered for probate was dated "November 1919", only the day of the month being omitted. It was held admissible to probate but this decision was in effect overruled by later decisions of this Court.

In In re Abrams' Will, supra [182 Okl. 215, 77 P.2d 103], the Court said in the body of the opinion:

" * * * The right to make a will is not an inherent or natural right, but rests wholly upon the legislative will. Statutory requirements are mandatory and must be substantially complied with. * * * The courts cannot inquire into the wisdom or reason for legislative requirements as to the manner of making and executing wills. Their duty is to ascertain the legislative intent and to enforce it. When a will is offered for probate the court does not inquire into the intention of the testator, but its duty is to see if the legislative intent has been complied with in the execution of the will, and if it is found that it has not, its duty is to deny probate of the proffered will. * * * "

The Court then quoted from the opinion of the Supreme Court of Montana in In re Noyes' Estate, 1909, 40 Mont. 190, 105 P. 1017, 1020, 26 L.R.A.,N.S., 1145, 20 Ann.Cas. 366, as follows:

" 'The question is not whether she intended this paper to be her will, but whether it is a will clothed with the form of law. An holographic will, like every other testament, is a solemn act. It matters not how clearly it conveys the last wishes of the decedent. If it is not clothed with the forms prescribed, it is null.' "

In the body of the opinion in the Abrams' case above mentioned it is said:

"It is to be regretted that the intention of the testatrix is defeated by her failure to observe the statutory requirements, but to hold otherwise

would in effect be to let down the bars to evils against which the statutory provisions are aimed."

The Court further cites with approval the decision in In re Tyrrell's Estate, 1915, 17 Ariz. 418, 153 P. 767, quoting from an English decision as follows:

" 'It may happen, even frequently, that genuine wills, namely, wills truly expressing the intentions of the testators, are made without observations of the required forms; and whenever that happens, the genuine intention is frustrated by the act of the Legislature, of which the general object is to give effect to the intention. The courts must consider that the Legislature, having regard to all probable circumstances, has thought it best, and has therefore determined, to run the risk of frustrating the intentions sometimes, in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. It is supposed, and that authoritatively, that the evil of defeating the intention in some cases, by requiring forms, is less than the evil probably to arise by giving validity to wills without any form in all cases.' "

In the Noyes' Estate case, supra, a holographic will was involved and the question was raised that it was not wholly written, dated and signed in the handwriting of the testator. It was all in his handwriting except the printed figures "190—". If this printing were omitted from the date it would be "Feb. 23 ———3". It was held that the instrument was without a date in testator's handwriting and invalid as a will.

In discussing the case, the Court quoted from Succession of Armant, 43 La.Ann. 310, 314, 9 So. 50, 52, 26 Am.St.Rep. 183, where it was said:

" '* * * The question is not whether she intended this paper to be her will, but whether it is a will clothed with the form of law. An holographic will, like every other testament, is a solemn act. It matters not how clearly it conveys the last wishes of the dece-dent. If it is not clothed with the forms prescribed, it is null.' "

The above cases construe Section 54, 84 O.S.1951, applicable to holographic wills, but that section is similar to the provisions of Section 55, above quoted, which is applicable to other classes of wills, and the rules announced as applicable to Section 54 are also applicable to Section 55.

Alexander in his Commentaries on Wills, Vol. 1, chapter XVI, section 419, page 567, had this to say:

" * * * The statutory provision that a will must be 'signed or subscribed at the end thereof,' was adopted to remedy real or threatened evils; therefore, its force should not be 'frittered away by exceptions.' Its provision should not be carried beyond the policy of the framers of it, yet that policy should not be defeated by judicial construction, or by lax interpretation. A very evident purpose of requiring the signature at the end of the will is not only that it may appear on the face of the instrument that the testamentary purpose which is expressed therein is completed and that the mind of the testator is fully made up to dispose of his property in the manner expressed, but also to prevent any opportunity for fraudulent or other interlineations."

In In re Stover's Will, 104 Okl. 251, 231 P. 212, 214, the Court quoted from Hill v. Davis, 64 Okl. 253, 167 P. 465, 468, L.R.A. 1918B, 687, as follows:

" * * * The Legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. * * *"

The contestant does not claim that the will of Grady Coplin is invalid because the signature is located three-fourths or an inch between the bottom line of the will which is the date line and the signature of Grady Coplin appearing in the second line of the attesting clause, but contends that the will is not subscribed at the end thereof as the statute requires.

No one knows that when Grady Coplin inserted his name in the second line of the attesting clause he had any intention that such action should constitute a signing of his will. It is quite reasonable to assume that he intended to sign on one of the lines so clearly intended for his signature between the date line and the attesting clause. It may be that Grady Coplin decided to consider the instrument further before signing his name at the end thereof and overlooked, until too late, carrying out such intention, but be that as it may, under the rulings above considered, Grady Coplin failed to sign his name at the end of the instrument and thus failed to meet a clear, mandatory statutory requirement.

I think it is wholly incorrect to conclude that the signature of a testator inserted in the blank left in the attesting clause, leaving the two blank lines intended for his signature blank, that he signed the instrument at the end thereof as required by statute.

For the foregoing reasons, I therefore dissent.

I am authorized to state that WILLIAMS, V. C. J., concurs in these views.