## Socialist Labor Case.

Argued October 3, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edwin J. Morrell,* with him *Caldwell, Fox & Stoner,* for appellant.

*David H. H. Felix,* for appellee, was not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, October 13, 1938:

On May 2, 1938, within five days after the last day for filing nomination papers, a petition was presented to the court below to set aside the nomination papers of the Socialist Labor Party. May 19th, was the day fixed for hearing, and notice was given to the several candidates of the Socialist Labor Party on May 3d. On the day fixed for hearing, a motion was made to dismiss the petition because the hearing was not held within the time prescribed by section 977 of the Election Code of 1937.[1]

---

[1] "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within five days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. . . . Upon the presentation of such a petition, the court shall make an order fixing a time

The court below denied this motion and directed that testimony be taken on the petition. Later these nomination papers were set aside.

The intent and purpose of the legislature in enacting section 977 was to secure a prompt decision of questions affecting candidates for office.

The time within which such questions may be resolved is frequently very short. While courts will respect and follow legislative enactments pertaining to election procedure, they will not do so where such enactments are infringements on the judicial power, or where the provision is clearly incompatible with important judicial business, or impossible of judicial performance. This act requires the court not only to set a definite day for hearing but to determine and decide, within a fixed time, the various questions presented in election matters.

The legislature may fix a time within which ministerial acts of procedure must be performed by litigants and parties so that the court may acquire jurisdiction of the subject-matter and the courts will not alter this legislative mandate[2]: *Meitner v. Scarborough,* 321 Pa. 212, 214; *Singer v. Del., L. & W. R. R. Co.,* 254 Pa. 502, 504; *Harris v. Mercur (No. 1),* 202 Pa. 313, 316; but where the act to be performed within a fixed time involves the exercise of purely judicial functions, such as hearing and decision of matters properly before the

---

for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over any other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers."

[2] Except in rare cases of fraud or where the performance has been prevented by the wrongful or neglectful act of a court official. See *Singer v. Del., L. & W. R. R. Co.,* 254 Pa. 502, 505.

court, or where it is impossible of judicial performance, as was the case here, within the time fixed by the legislature, such provisions will be held to be directory and not mandatory: *Election Cases*, 65 Pa. 20, 34; *Stevenson v. Lawrence*, 1 Brewst. 126. In *Pearlman v. Newburger et al.*, 117 Pa. Superior Ct. 328, the provision of the Act of April 22, 1874, P. L. 109, governing trials without jury, that the decision of the court "shall be filed . . . as early as practicable, not exceeding sixty days after such decision shall have been made from the termination of the trial," was held to be directory. In that case the decision was filed more than sixty days after the end of the trial because of the illness of the presiding judge. The court said at page 338: "Irrespective of what may be the proper construction of this section, we believe that this provision is directory only. Otherwise all the time consumed in the trial of the case would be for naught by reason of a failure to file the decision within sixty days from the termination of the trial, irrespective of the cause for delay. Such certainly was never the intention of the legislature."[3]

In the *Election Cases*, supra, the Act (July 2, 1839, P. L. 559, 566) directed that election contests should be heard and determined "within the next term after the

---

[3] And see *Commonwealth v. Jailer*, 7 Watts 366; *Commonwealth v. Sheriff and Gaoler*, 16 S. & R. 303; *Clark v. Commonwealth*, 29 Pa. 129. These cases were decided under the two-term rule of the Habeas Corpus Act providing for the discharge of prisoners not tried within two terms after commitment. In all of the cases it is held that the act was not intended to be applied where trial of the prisoner was impossible during the two terms. In the last case it was said at p. 135: "The statute was made to restrain malice and oppression of prosecutors, and to relieve *wrongful* imprisonment; not to embarrass the administration of the criminal law." It is well settled that a statute imposing a time limit upon the performance of an act by a public officer or body, is to be construed as intended merely to secure prompt and orderly action and to be directory rather than mandatory: Endlich on the Interpretation of Statutes (1888), sections 436, 437.

election." A contest for the office of prothonotary had been instituted within the time prescribed, but it was not determined until after the next term. On appeal this court held that the time limit was directory. The court, however, will proceed with all diligence, circumscribed as little as possible by other judicial labors, to the end that this type of case may be promptly decided.

To hold that the legislature may direct a court to stop all of its business (for instance, in the midst of a homicide case), to take up a case of this nature involving testimony and delay, would be as Judge AGNEW states,[4] "a mockery of justice" as it presents an impossible situation. In the case before us, the proceedings were instituted within the five days, but because of the pressure of judicial business the time for hearing was fixed later than ten days from the last day for filing petitions. The decision in the case was necessarily postponed by taking testimony and the consequent delay was not unreasonable but fully warranted by the circumstances. In the circumstances the court below did not err in concluding that it was within its discretion in holding the hearing when it did. Appellants are not harmed, if they were successful on the merits they would receive the decision of this court in ample time to place their names on the ballot in the ensuing election.

At the first hearing the court below permitted the nomination papers of the Socialist Labor Party to be amended by substituting proper affidavits. Conceding that this was proper, which we do not here decide, the sole question before the court when the amended papers were presented was the competency of the affiants to make the affidavits required by section 951(d) of the act.[5] There is no question but that the affiants must

---

[4] *Election Cases,* 65 Pa. 20, at 34.

[5] These objections were properly raised under section 976, which provides: "No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—(a) it contains

have some personal knowledge as to the first six requirements of the act. One of the two persons whose affidavits are challenged admitted that in the papers containing eight hundred and seventy names, he had personal knowledge of twenty-two, and the other affiant that he had personal knowledge of but a dozen of six hundred and sixty signers. The other names were obtained from strangers and passers-by.

We place in the footnote the relevant testimony of these two affiants,[6] and from an examination of the

---

material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits."

Section 951(d) of the Election Code provides: "Each sheet shall have appended thereto the affidavit of some person, not necessarily a signer, and not necessarily the same person on each sheet, setting forth—(1) that the affiant is a qualified elector of the State, or of the electoral district, as the case may be, referred to in the nomination paper; (2) his residence, giving city, borough or township, with street and number, if any; (3) that the signers signed with full knowledge of the contents of the nomination paper; (4) that their respective residences are correctly stated therein; (5) that they all reside in the county named in the affidavit; (6) that each signed on the date set opposite his name; and (7) that, to the best of affiant's knowledge and belief, the signers are qualified electors of the State, or of the electoral district, as the case may be."

[6] Paul H. Barnes (First Hearing): "Q. You gave them to certain friends to circulate, you don't mean to say you personally obtained each and every signature on the 61 petitions? A. No. . . . Q. You are not personally acquainted with all of the persons who signed them, are you? A. No. . . . Q. You yourself don't know where they live? A. No. Q. You don't know whether that is their own proper handwriting or whether some one else signed for them do you? A. No. . . . Q. You don't know whether their respective residences are set forth therein? A. No. Q. You don't know whether all of them reside in Allegheny County do you, you never verified that, did you? A. No."

(Second Hearing): "Q. Of whose residences as stated after their names and of whose residences within the county you have personal knowledge? . . . A. Twenty-two that I know personally who live at that address. Q. Now, . . ., the balance of the 870 names on the sheets last referred to were strangers . . . to you,

84

whole record we conclude that they were not qualified as required by this section of the Act of Assembly. On this point, the case of *Yost's Appeal*, 253 Pa. 551, cited by appellant, has no application.

The legislature did not intend to make it impossible to file nomination petitions or papers to secure a place on the ballot, but it certainly intended that affiants should possess more acquaintance with the facts sworn to than is here expressed. It would be better that the affiant actually take the papers around for signature, and have some personal knowledge or direct information from the signers of the requirements of this section before the necessary affidavits are filed.

The decree of the court below is affirmed.

_____

were they not? A. Yes, sir. . . . Q. The only thing you know is what that person you stopped said? A. They didn't say it, they wrote it. Q. And the only thing that you know about their residence was their respective names on those sheets, other than the ones we have eliminated, is that they wrote that down as their residence? A. That is right. . . ."

Q. George Cortsen (First Hearing): "Q. Did you circulate all of those papers yourself? A. I was in charge, I had a crew. Q. You don't have personal knowledge that their correct addresses are shown? A. No. Q. You don't have personal knowledge that they all reside in the County of Philadelphia? A. No personal knowledge."

(Second Hearing): "Q. Now do you know with reference to any name on sheets 102, 108, 110, 116, 123 and 133, that the correct person's name was put down there other than what they told you when they signed the paper? A. No I would not know. Q. How many signatures do you know? A. I would perhaps know a dozen, personal friends of mine. Q. Outside of that dozen you don't know anything about the others? A. No. Q. Do you know anything about the residence outside of those dozen, . . . as shown on . . . any of those papers of any other single person as being a correct residence other than what this individual unknown to you told you? A. No. Q. You never tried to verify it in any manner? A. No. . . . Q. Were you present when all of them were obtained? A. No. . . ."