## Hanuszczak License

*I. Finkelstein,* for appellant.

*Bernard I. Shovlin,* for Commonwealth.

MCCLANAGHAN, J., April 13, 1960.—The following facts are admitted:

1. Appellant was the holder of a 1959 automobile driver's license.

2. On January 9, 1960, he was notified that his driving privileges had been suspended for a period of

15 days because of his conviction for operating an automobile too fast for conditions in violation of The Vehicle Code of April 29, 1959, P. L. 58.

3. Appellant contends the suspension is without authority in that he was not afforded a hearing as required by The Vehicle Code.

4. The Commonwealth contends that the notice sent to appellant requested appellant to return the letter to the Revenue Department and indicate whether or not he wished a hearing, and advised appellant that his failure to do so within 10 days would be considered an automatic suspension.

5. Appellant did not notify the Revenue Department.

6. No hearing was held, and appellant's driver's license was ordered suspended.

### Conclusions of Law

1. Section 618 of The Vehicle Code of 1959 (Section 615, The Vehicle Code of May 1, 1929, P. L. 905) provides that the Secretary of Revenue may suspend an operator's license after a hearing before the Secretary or his representative, whenever the Secretary finds upon sufficient evidence that such person has committed any violation of the laws of this Commonwealth relating to vehicles.

2. The holder of a driver's license may not be compelled to waive a hearing before the Secretary or his representative.

3. The Vehicle Code does not require an operator to request a hearing but, on the contrary, provides that the Secretary may suspend the operator's driving privileges after a hearing whenever the Secretary finds upon sufficient evidence that such person has committed a violation of The Vehicle Code.

4. If section 618 is mandatory and if the person may not waive a hearing, the Secretary cannot suspend

such person's driving privileges without a hearing held in accordance with the requirements of The Administrative Code of April 9, 1929, P. L. 177. See Pennsylvania State Athletic Commission v. Bratton, 177 Pa. Superior Ct. 598; Lebendig License, 16 D. & C. 2d 102; Commonwealth v. Frisco, 67 D. & C. 51; Commonwealth v. Hockenbury, 72 D. & C. 274.

5. Section 618 of the act is mandatory if the thing (the hearing) directed to be done is of the essence of the thing required to be done: Socialist Labor Case, 332 Pa. 78.

6. A reading of The Vehicle Code in its entirety clearly indicates that the purpose of such a hearing is to afford the operator a full opportunity to be heard, to cross-examine witnesses and to present a full legal defense. The fact that on appeal from the decision of the Secretary the court hears the matter de novo emphasizes that a hearing is of the essence of the thing required to be done.

7. The Secretary was required to fix a hearing before suspending appellant's driving privileges, and the fact that appellant did not, as requested by the Secretary, demand a hearing, did not authorize the Secretary to suspend appellant's driving privileges without a hearing.

8. The action of the Secretary in suspending appellant's driving privileges without a hearing was illegal and improper.

### Order

And now, April 13, 1960, it is ordered and decreed that the appeal of Walter Hanuszcak from the order of the Secretary of Revenue of the Commonwealth of Pennsylvania suspending his automobile operator's privileges for a period of 15 days is hereby sustained and the suspension order rescinded.

## Oberdorfer Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following opinion of LEFEVER, J., January 12, 1960.—Should the amount of Federal estate tax previously paid by the executors upon decedent's estate be added to the actual value of a future interest therein at the time the right of possession later accrues to the remainderman, in appraising the value thereof for inheritance tax purposes? This question of first instance is presented on this appeal from the decree of the register of wills so assessing inheritance tax. The Commonwealth states that this is a test case, with many like cases awaiting the final decision hereof.

Testator died on December 23, 1955. By his will he bequeathed $62,000 in specific legacies to various persons "free of tax" and the residue of his estate in trust

to pay the income therefrom to his sister, Norma O. Bacharach, for the duration of the trust, and to pay over the principal thereof to Justin L. Bacharach, petitioner in this case, one-third when he attained the age of 50 years, one-half of the remaining principal when he attained the age of 55 years and the entire remaining principal when he attained the age of 60 years.

The executors of testator's estate, on March 22, 1957, paid a Federal estate tax of $239,048.96. By adjudication dated June 19, 1957, Judge Shoyer approved the account of the executors and awarded the residue of the estate to Norma O. Bacharach and Leon J. Obermayer, trustees, for the purposes of the trust.

On December 30, 1957, petitioner attained the age of 50 years, and with it the right to receive one-third of the principal of the trust. The trustees then filed a so-called "supplemental inheritance tax report and appraisal", setting forth that on December 30, 1957, the assets of the trust had a gross value of $492,827.49 and a net value, after deducting allowable administration expenses, of $490,475.99, and that one-third thereof had a value of $163,491.99. By adjudication of Judge Bolger the trustees' first account was approved, one-third of the principal was awarded to petitioner "subject to such Pennsylvania transfer inheritance tax as may be assessed and found due" and the remaining two-thirds were awarded back to the trustees for the purposes of the continuing trust.

On May 15, 1959, The Register of Wills of Philadelphia County filed his appraisement of this estate, inter alia, as follows:

"Assets re-appraised as of 12/30/- 1957, date of attainment of age 50 years by Justin L. Bacharach, nephew, when the first term of years terminated, at

which time he was entitled to the distribution of one-third of the principal ... $492,827.49
"Deductions allowed ............. 2,351.50

"Net re-appraised Trust .......... $490,475.99
"Add back principal which has been withdrawn from the Residuary Estate to pay Federal Estate tax of $239,048.96 in 1957. ......................... $239.048.96

$729,524.95
"ONE-THIRD now distributable to nephew ........................... 243,174.98
Tax @ 15% $36,476.25"

Petitioner has appealed from this assessment, contending that it was error to add the amount of the Federal estate tax, and that the inheritance "tax should be assessed solely upon the actual value of the one-third share distributable to him at the time the right of possession accrued to him, or upon one-third of $490,475.99, or the sum of $163,491.99".

The transfer inheritance tax of Pennsylvania is in many respects unique. Only a few other States have provisions similar to those raising the issue presented. Hence, it is understandable that there are no reported decisions thereon in Pennsylvania or elsewhere. The philosophy underlying the Pennsylvania transfer inheritance tax is different from estate taxation where only one tax is assessed upon the entire estate at the time of death (less specified allowable deductions). In contrast, in Pennsylvania trusts or legal life estates, where income for a specified period is given to one person or to succeeding persons and the principal goes to other persons, successive inheritance taxes are assessed upon the value of each life estate, and, finally, upon the remainder.

Section 2 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2302, sets forth the method of computing the tax at the time of decedent's death (i.e., when the first life estate comes into being or the estate goes outright). In assessing the tax at this time the statute directs the register to appraise the "clear value" of the estate, viz., the gross value less "the debts of the decedent, reasonable and customary funeral expenses, bequests, or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon, reasonable expenses for the erection of monuments or grave stones, grave and lot markers and the expenses of the administration of such estates . . ." Section 2 further directs that "no deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States . . ."

Section 3 of the act governs the assessment of inheritance tax upon the value of the future interest at the time the right of possession accrues to the owner, viz:

"Where there is a transfer of property by a devise, descent, bequest, gift or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. *The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner*, but the owner may pay the tax at any time prior to his

coming into possession": 72 PS §2304. (Italics supplied.)

The reason for the different basis of valuation of outright gifts and life estates from remainder interests was aptly described by President Judge Klein of this court in Heberton's Estate, 51 D. & C. 285, 295, affirmed per curiam, 351 Pa. 564, 568, in the following language:

"Section 3 of the Act of June 20, 1919, P. L. 521, which is a substantial reënactment of section 3 of the Act of May 6, 1887, P. L. 79, is clearly intended for the benefit of the remaindermen and gives them the right to elect when they wish to pay the transfer inheritance tax. It is also clear that assessment of the tax shall be on the value of the estate at the time the tax is paid. This protects the remaindermen against inflationary rises in values and enables them to fix with finality the amount of their tax liability without being compelled to speculate on future economic developments. At the same time, if the tax is paid before the remaindermen come into actual possession, the Commonwealth is protected against future drastic reduction of the value of the corpus, which in the present case was in excess of 50 percent of the appraised value."

Is is apparent from the foregoing that the legislature has expressly given the remainderman the election of the time upon which to appraise his interest and to pay the tax. He may pay the tax on the estimated value of the remainder at the date of decedent's death, in which event he is allowed specified deductions from the gross appraisement, but Federal estate tax is *not* one of the allowable deductions. Consequently, if he pays the inheritance tax at that time, the Federal estate tax constitutes a part of this value on his interest, but he escapes liability for tax upon any increase in value of the estate between the death

of decedent and the time he receives the future interest (and in many estates the accretion is substantial). On the other hand, if the remainderman elects, he may postpone payment of the tax until the time when he becomes entitled to possession, at which time the tax is assessed upon the "actual value of the estate" which he receives. In that instance, he pays tax on an actuality, rather than a possibility. Thus, if the estate has substantially increased in value by inflation, by wise or speculative investments of the trustees or in any other manner, he is liable for tax upon the additional value. On the other hand, if the estate has decreased for any reason such as an uninsured fire, unwise investments of the trustees, a drop in the securities' market or a financial depression, he pays the lower tax on the actual value of the estate he in fact receives, and the Federal estate tax originally paid is not involved.

In Kirkpatrick's Estate, 275 Pa. 271, it was held that the cited provision of the statute was "plain and unambiguous language, holding that federal tax should not be deducted in determining the amount of the inheritance tax . . .", and, accordingly, the amount of the Federal estate tax paid was not deductible in fixing the value of the taxable estate which was given outright. Likewise, the Federal estate tax was held not deductible in evaluating life estates: Cowan Estate, 78 D. & C. 543, and Canuso Estate, 12 D. & C. 2d 460. These cases dealt with the valuation of the taxable estate at the date of decedent's death and in conformity with the precise language of section 2 of the statute. However, they do not apply to the valuation of the remainder estate, which is covered by section 3 of the act.

It is significant that the Commonwealth, from the enactment of the Transfer Inheritance Tax Act in 1919 until 1958, has interpreted it as set forth above.

In 1958, the Commonwealth reversed its position. It now urges that its previous interpretation of the statute was erroneous, and that the Federal estate tax previously paid must be added to the value of the future interest at the time of accrual in possession, in determining the then value of the remainder interest.

It is clear that the Commonwealth is not estopped from correcting an erroneous practice by the errors made by its officials, agents or employes in the past: Commonwealth v. Western Maryland Railway Company, 377 Pa. 312, and cases therein cited. Nor does the past error of an administrative agency give petitioner a vested right to have the error continued. "An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it": Federal Deposit Insurance Corporation v. Board of Finance and Revenue of Commonwealth, 368 Pa. 463, 472. See Commonwealth v. Quaker City Cab Co., 287 Pa. 161.

However, "When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters— . . . (8) legislative and administrative interpretations of such law": Article IV, sec. 51, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

Therefore, if there be any ambiguity in the statute, the continuous administrative interpretation thereof for a period of 37 years is strong indication that this was the correct interpretation thereof. Moreover, the fact that during these 37 years the legislature took no specific action to change the administrative practice, although it amended other portions of the Transfer Inheritance Tax Act, indicates that the legislature approved the administrative interpretation: Common-

wealth ex rel. v. Beamish, 20 D. & C. 324. In that case the Common Pleas Court in Dauphin County, speaking through President Judge Hargest, stated, at pages 326 and 327:

"In view of this long acquiescence by both the legislature and the administrative department, the court should not lightly overturn this construction. Of course, where a statute is clear, neither legislative nor administrative interpretation is to govern, but where there is ambiguity recourse may be had to such legislative or administrative interpretation to aid in its construction. The legislature amended the Act of 1893 [June 10, 1893, P. L. 419] in 1903 and in 1931, and these provisions were untouched. . .

"The legislature, having had the act twice before it for amendment, did not see fit to change the interpretation given by the administrative department. We must assume that the legislature knew the interpretation which the administrative department of the government put upon it, and continued the act in force without amendment. The legislature therefore must be considered as having also adopted that interpretation. The statute is not clear, and we are asked . . . to read something in it which cannot be found there in terms, and thereby to set aside the interpretation which has been acquiesced in for 40 years. This we decline to do." See also McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 75 L. Ed. 1183, 51 S. Ct. 510 *.

---

* It is noteworthy that the proposed "Inheritance and Estate Tax Act of 1959", House Bill 1195 of the 1959 Session of the legislature, expressly provided that Federal estate tax should not be included in appraising a future interest as here involved (see sections 601 and 651), but included such tax where the taxpayer elected to accelerate the date of payment of the inheritance tax. See section 651, 713(a) and 714(a). Both the House and the Senate passed the bill containing these provisions. However, the bill failed of passage only because of controversy over inclusion

It follows that this court should adopt the long established administrative interpretation, if the language involved here is ambiguous. But the language is *not* ambiguous. Section 3 of the Transfer Inheritance Tax Act provides that: "The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner . . .". As stated by this court in Kelley Estate, 5 D. & C. 2d 1, 3: "The language of this section seems so clear as to require no interpretation, indeed, to admit of no argument". The statute provides that only the actual value of the assets in the estate at the time the remainderman's right accrues shall be taxed. This is apparent from the language ". . . the tax on such estate shall not be payable, nor shall interest begin to run, until the person liable for the same shall come into actual possession of such estate . . ."

Petitioner never came "into actual possession" of the funds used to pay the Federal estate tax. This tax was paid by the executors two years before and formed no part "of the estate at the time the right of possession accrues to the owner" (petitioner in the instant case). And the word "estate" refers to the estate, viz., future interest, which takes effect in possession after the expiration of the period of years. (The antecedent of "such" is not the "property" or "estate" referred to in section 2). It follows that the Federal estate tax which was paid two years before, based on the valuation at decedent's death four years before, was not part of the estate "at the time the right of possession accrues to" petitioner. Furthermore, there is no provision in section 3 respecting deductions, nor disquali-

of article XI, setting up restrictions for entry into the safe deposit box of decedent. Hence, the legislature by express action approved the practice of *not* including Federal estate tax in appraising a future interest such as here at issue.

fication for deductions. This is logical, because deductions are normally allowable at decedent's death, not at the time a remainder falls in, when the question is the value of what remains. This was clearly so stated in Reynolds Estate, 359 Pa. 616, 621:

"While the value of *life estate* is fixed commencing with the date of the death of testator: Rowell's Estate, supra [315 Pa. 181], the value of *remainders* is determined as of the time the *right to possession* accrues, i.e., at the death of the life tenant: *Jewell's Estate*, 235 Pa. 119, 83 A. 610; Simpson's Estate, 332 Pa. 115, 2 A. 2d 851, unless the tax on the entire estate is paid under section 3 of the Act of 1919, supra: *Heberton Estate*, supra, p. 568."

If the Commonwealth's position were adopted, the result would be harsh, confiscatory or even worse. For example, let us suppose that the gross value of the instant estate as of December 30, 1957, instead of $492,827.49, had been reduced to $40,000 because of unwise investments, a financial panic, collapse of the stock market or other reasons. If the Commonwealth's theory be correct, there must be added to the $40,000 value of the shrunken estate the $239,048.96 Federal estate tax heretofore paid, making a total value of $279,048.96. Inheritance tax upon this at 15 percent amounts to $41,857.34. As a consequence, the remainder interest of petitioner would be wiped out and petitioner would, at least theoretically, owe the Commonwealth $1,857.34. Cf. Jennings Estate, 19 D. & C. 2d 240. The harshness of such a result is self-evident. Moreover, petitioner would be in the anomalous position of having added to his remainder interest Federal estate tax computed upon an entirely different and more valuable estate, decedent's estate in 1955, not the hypothetically reduced estate of 1957, on which the Federal estate tax would have been much less had it

been then levied. This further demonstrates the fallacy of the Commonwealth's position.

It would appear that the officers charged with the duty of administering the transfer inheritance tax from 1919 to 1958 were mindful of the harsh and confiscatory result that would follow if the Commonwealth's present interpretation of the statute had been adopted. Losses in trust estates were substantial during the great depression of the 1930's, and unfortunately did occur in proportions as severe as those postulated in the above illustration. Hence, the long established administrative interpretation of the Transfer Inheritance Tax Act has real justification in actual experience.

Finally, in construing a tax statute any doubt or uncertainty must be resolved in favor of the taxpayer: Commonwealth v. Allied Building Credits, Inc., 385 Pa. 370. In that case the Supreme Court stated, at page 376:

" 'In approaching these questions, it must be remembered that this is *a taxing statute which must be strictly construed*. We are not dealing with exemptions, as the Commonwealth has suggested, but with the essential right to the tax. Any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. . . . The words imposing the tax should be clear and unambiguous . . . ; nor can words be extended by implication.' "

And in Paper Products Company v. Pittsburgh, 391 Pa. 87, 94, the court said:

"Furthermore, if there were any reasonable doubt, tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authorities [citing cases]."

We are here dealing with the imposition of the tax remainders, and not exemptions, as the Commonwealth argues. Therefore the cited cases are apposite.

The Commonwealth argues that failure to adopt its position will create lack of uniformity in the Transfer Inheritance Tax Act because of the unequal treatment of life tenants and beneficiaries of original absolute gifts as compared with remaindermen, and "pose constitutional problems". The answer is that these "constitutional problems" have not arisen in 40 years or more of the statute's life. The Commonwealth further urges that petitioner's position "would afford a perfect blue print for tax avoidance". However, it is well established that there is nothing illegal or immoral in tax avoidance; tax *evasion* only is condemned, and the legislature should eliminate the opportunity for tax avoidance if it sees fit.

For all of the foregoing reasons the hearing judge concludes that the register of wills erred in adding the $239,048.99 Federal estate tax previously paid by the executors to the other assets, in appraising petitioner's remainder interest in one-third of the trust principal on December 30, 1957, and in assessing transfer inheritance tax against petitioner upon that basis.

Accordingly, January 12, 1960, the appeal is sustained and the record is remitted to the Register of Wills of Philadelphia County for action not inconsistent herewith.

*Irvin Stander*, for Commonwealth.

*Richard V. Zug*, of *Obermayer, Rebmann, Maxwell & Hippel*, for appellant.

SAYLOR, J., May 9, 1960.—The Commonwealth of Pennsylvania has filed exceptions to an opinion sustaining an appeal from the action of the register of wills in appraising for inheritance tax a future interest when accruing to a remainderman, not at its real value alone but by adding to that value the amount of a Federal estate tax paid prior to the time the right of possession accrued. In adopting such practice the