## Brady Nomination Petition

*Fred C. Adams* and *Ira B. Coldren,* for petitioner.

*Anthony Cavalcante,* for respondent.

*Thomas A. Waggoner, Jr.,* for County Board of Elections.

BANE, P. J., April 2, 1963.—Pursuant to the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, 25 PS §2937, Edward Brady, present Deputy Prothonotary of Fayette County and candidate for the Democratic nomination for the office of prothonotary, has filed objections to the nomination petition of his opponent, Edward L. Brady, of New Geneva, Fayette County, Pa.

The case came on for hearing on March 26, 1963, and testimony was taken. Our factual findings, essential to the disposition of this case, are set forth in the course of this opinion.

At the outset of the hearing, Anthony Cavalcante, representing the respondent, Edward L. Brady, filed a formal motion with the court requesting that the objections to his client's nomination petition be dismissed. The motion asserts, inter alia, that the objector, Edward Brady, failed to set forth in his objections:

1. The names of those persons whose signatures were to be challenged;

2. Those whose names he was seeking to have declared invalid;

3. The names of those who might seek to withdraw their names from his client's petition.

It is also asserted the said Edward L. Brady did not receive reasonable notice of the filing of the objections, and that, for all of these reasons, he was prevented from preparing a defense to the objections.

We have carefully reviewed the record, and can find no merit to the aforesaid challenges. The petition of the objector outlines in meticulous detail the basis of his objections to the nomination petition of Edward L. Brady. As to the adequacy of notice, reference need only be made to section 977 of the Election Code, supra, 25 PS §2937, which provides that the objections must be filed within seven days after the last day for filing said nomination petitions, which, in the instant case, was March 18, 1963. The objections were presented to this court on March 22, 1963, and Tuesday, March 26th was set as the time for hearing thereon. All interested parties were served on March 22, 1963. The date of March 26, 1963, was the eighth day of the 10-day limit prescribed by the act within which a hearing might be held. It is to be noted that such hearing shall have precedence over any other business of the court, and shall be determined not later than 15 days after the last day for the filing of nomination petitions. It is important, then, that objections to nomination petitions be timely presented and expeditiously disposed

of. In view of these legislative directives, we may only conclude that notice to respondent was adequate, and his motion for dismissal of the objections is denied.

Fred M. Bartock, Director of the Fayette County Elections Bureau, called as a witness in this proceeding, has testified that three nomination petitions have been filed with the Elections Bureau for the office of Prothonotary of Fayette County, viz.: one by Edward Brady, one by Edward L. Brady, and a third by one Charles O. Dean. It appears without dispute that the similarity of the names of Edward Brady and Edward L. Brady has given rise to the present action. We might well ponder the quirk of fate which has produced this unusual situation. If it happened only as a matter of casual occurrence, that is one thing; if not, then some individual, or a group of individuals, are guilty of conduct so reprehensible that it cannot be condoned by this court.

Edward Brady, a resident of the City of Connellsville, Fayette County, Pennsylvania, and a life-long Democrat, has been an announced candidate for the office of prothonotary. He is the present deputy prothonotary, and seeks to succeed his father, John J. Brady, who has held the office for many years.

Charles O. Dean, a resident of the City of Uniontown, Fayette County, Pennsylvania, also a long-time member of the Democratic party, was an announced candidate for the same office.

The third member of this group is an individual by the name of Edward L. Brady, who resides at New Geneva, Fayette County, Pennsylvania, whom we are advised is a coal miner and also serves as a lay minister. He is a registered and enrolled member of the Republican party.

With this brief background, it appears that on March 18, 1963, the last day on which nomination petitions might be filed for the pending May Primary, Charles

O. Dean appeared at the Elections Bureau in the Court House at Uniontown and presented for filing his own nomination petition and also that of Edward L. Brady. On being directed to the County Treasurer's office to pay the necessary filing fees, Charles O. Dean went there and paid the filing fees for his own petition and also the fees for the nomination petition of Edward L. Brady. He then returned to the Elections Bureau and delivered the petitions for filing. We might state at this point that, while the foregoing facts are not impossible of explanation, it taxes the credulity of this court when we are asked to believe that one candidate would be so solicitous of the welfare of his opponent that he would deliver his opponent's petition for filing and pay the filing fee therefor, and not have had some motive for so doing.

Both Charles O. Dean and Edward L. Brady were present in court throughout the entire hearing, and while each was seriously implicated in matters warranting an explanation, neither saw fit to take the stand. Their silence, though perhaps well advised, has left the petitioner's testimony uncontradicted. It is not disputed that Charles O. Dean, on March 15, 1963, contacted one Eugene T. Hellein, who resides in Hopwood, Fayette County, Pennsylvania, and asked Mr. Hellein to obtain signatures to a nomination petition made out in behalf of one Edward L. Brady. Mr. Hellein testified he promised Mr. Dean he would obtain the necessary Democratic signatures to the petition, but, after procuring only five names thereon, he became ill, and on March 16, 1963, he called Mr. Dean and told him he would have to pick up the petition, since he could not complete the procurement of the signatures. Mr. Hellein testified further that on March 16, 1963, Mr. Dean picked up the petition, first having asked him to sign the circulator's affidavit thereon. This Mr. Hellein testified he did. He also stated that on March 18, 1963, he

was called on the telephone to verify his signature to the affidavit and that he never saw the petition thereafter from the time it left his home on March 16th, with only five signatures contained thereon, until it was exhibited to him on the witness stand. In connection with the names which now appear on the lines from 6 through 113, Mr. Hellein testified he did not know the names of any such signers, was not acquainted with them, and made no investigation or inquiry to ascertain the truth or verity of the information set down on the petition by them.

We might well stop at this point and sustain the objections to the nomination petition of Edward L. Brady. The Election Code, supra, section 909, 25 PS §2869, provides that each sheet of the petition shall have appended thereto the affidavit of some person, not necessarily a signer, and not necessarily the same person on each sheet, setting forth "(a) that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State, or of the political district, as the case may be, referred to in said petition, unless said petition relates to the nomination of a judicial candidate in which event the circulator need not be a duly registered and enrolled member of the designated party; (b) his residence, giving city, borough or township, with street and number if any; (c) that the signers thereto signed with full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name; and (g) that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the state, or of the political district, as the case may be."

In Frank Petition, 173 Pa. Superior Ct. 400, it was held that section 909, supra, does not require that the

affiant shall have been personally present when the signatures were affixed to the petition. It does require, however, that he shall have knowledge of all the matters above enumerated from (c) through (g). When such knowledge is lacking, the affiant cannot make the affidavit.

In Socialist Labor Case, 332 Pa. 78, reiterated in Frank Petition, supra, the Supreme Court held: "The legislature did not intend to make it impossible to file nomination petitions or papers to secure a place on the ballot, but it certainly intended that affiants should possess more acquaintance with the facts sworn to than is here expressed." This authority succinctly states the position of this court relative to the testimony of the circulator affiant, Mr. Hellein. Since Mr. Hellein has admitted that he did not possess the required knowledge to meet the requirements of section 909, supra, the names which were placed on the petition from lines 6 through 113, without any knowledge on his part, will be stricken, and the nomination petition circulator's affidavit declared to be invalid as to them. For this reason alone the nomination petition of Edward L. Brady must be stricken.

The record further discloses, from testimony of witnesses, that Charles O. Dean next delivered the petition to one Robert Salipek, of Masontown, Pa., on March 16, 1963, who procured a number of signatures thereon. The petition was then again returned to Mr. Dean on March 16, 1963, who, in the company of Anthony Cavalcante, counsel for respondent in this proceeding, delivered the petition to one Minnie Valente, of Redstone Township, Fayette County, Pennsylvania. This witness testified that she and her husband procured the signatures on lines 35 through 113. As a result of her tour of the taverns in the area in the procurement of signers to this petition, we have the sorry spectacle of witness after witness testifying that,

because of their condition, they had no knowledge of the contents of the petition which they signed; others that they were informed the petition they were signing was for Edward Brady; while still others that they were informed that Edward L. Brady was a Democrat and they have since learned he was a Republican; and all now asking that we permit them to withdraw their names from the petition which they signed in behalf of Edward L. Brady. This we will not now permit, since they voice their objections too late for the candidate to procure other signatures in time to file. The names of those referred to in this category are contained on lines 7, 72, 37, 40, 80, 15, 31, 102, 91, 94, 90, 103, 104, 87 and 85 of the petition of Edward L. Brady. While we take no formal action to declare these signatures invalid, we must conclude that false representations or other misinformation was furnished the signers. This also leads to the reasonable conclusion that many others may likewise have been ignorant of the contents of the petition which they signed. Therefore, the affidavit made by the affiant that the signers signed the petition with the full knowledge of its contents is not true.

The petition of Edward L. Brady has admittedly only 114 signatures. Section 912 of the Election Code, supra, as amended, 25 PS §2872, requires that the nomination petition for an office to be voted for by the electors of an entire county shall be signed by at least 100 registered and enrolled members of the proper party. An examination of this petition discloses that there are two signatures on lines 73 and 105, viz., Albert Petrazzi and Teresa Guerrieri, who are not registered electors. These must be stricken. In addition, there are five signatures on lines 18, 17, 65, 49 and 52, who had previously signed other petitions for the same office. Under section 977 of the Election Code, supra, 25 PS §2937: "If a person shall sign any nomination petitions or papers for a greater number of candidates than he is permitted

under the provisions of this act, if said signatures bear the same date, they shall, upon objections filed thereto, not be counted on any petition or paper, and if they bear different dates, they shall be counted in the order of their priority of date, for only so many persons as there are candidates to be nominated or elected." These five names and category appear as follows:

*Line No.*

| | *Name* |
|---|---|
| 52 | Andy J. Swentko, Jr. |
| 18 | Patsy Alexander, Jr. |
| 17 | Savino F. Amminiti |
| 65 | Carl Carbonara |
| 49 | Peter Calvaresi |

*Reason Invalid*

Previously signed petition of Charles O. Dean (page 5, Line 25)

Previously signed petition of Edward Brady (Petition No. 14, line 100)

Previously signed petition of Edward Brady (Petition No. 9, line 113)

Previously signed petition of Edward Brady (Petition No. 8, line 14)

Previously signed petition of Edward Brady (Petition No. 8, line 54)

These five names must also be stricken.

On line 85 appears the name "Andrew, Jr.," with no such name registered. Line 92 contains an illegible signature. On line 32 appears the name "Mary Plaski," whose husband testified he signed her name without her direction or authority. On line 21 appears the name

"Bill Gooding," which was obviously signed by the same person who signed "Edith Gooding" on line 25. On lines 108 and 109 appear the signatures of Josephine Lucente and Florence Lucente, written in the same handwriting and obviously signed by the same person who signed Joseph V. Lucente on line 110. These several signatures, six in all, must also be stricken.

In addition to the foregoing, our attention has been directed to the provisions of the Election Code, section 908, 25 PS §2868, which provides that each elector who signs a nomination petition shall . . . "add his occupation and residence, giving city, borough or township, with street and number, if any. . . ." Under the authorities we have examined, we find the usual and customary information, adequate for mailing purposes, sufficient to meet the requirement for residence addresses in townships: Providence Township Local Option Referendum, 84 D. & C. 573. In the instant case, 39 signers have given their address as "Redstone Township," 16 have signed simply "Masontown, Pa.," two gave "North Union Township," four gave "Menallen Township," five gave "Luzerne Township," and one simply "Allison, Pa.," without any township designation. We have been asked to declare these signatures void because of inadequate address designations, since many of our boroughs and townships possess street number and mailing addresses.

We view the address requirement as one of those which assists in preventing fraud by permitting the signers to be readily identifiable. Although a liberal view has been adopted, the cases do not permit a complete abandonment of the statutory requirement to the extent that only the township or borough be shown, particularly so if there be actually street numbers or mailing addresses available.

While we are fully cognizant and take judicial notice of the fact that there are street and number addresses

in the Borough of Masontown, and that there are mailing addresses and village post offices in many of our townships, we need not go beyond the record before us and the witnesses who testified to ascertain that there were at least nine such who failed to supply a proper and adequate address.

On line 72, Mr. Ed Rebovich, who signed simply Redstone Township, testified he resides in House 65, Filbert, and that his mailing address is Box 178, Fairbank, Pa.

On line 15, William Knight, who signed simply Masontown, Pa., testified he resides at No. 2 South Main Street.

On line 30, Robert Plaski, who signed Masontown, Pa., testified he resides at No. 102 South Main Street.

On line 102, Earl Campbell, Jr., who signed Redstone Township, testified his mailing address is Box 293, Fairbank, Pa.

On line 91, Robert H. Brown, who signed Redstone Township, testified he resides at House No. 7, Filbert, and his mailing address is Box 149, Fairbank, Pa.

On line 94, Joseph Kolek, who signed Redstone Twp., testified he resides at Filbert and that his mailing address is Box 343, Fairbank, Pa.

On line 90, William R. Miller, who signed Redstone Township, testified his mailing address is Box 16, Fairbank, Pa.

On line 103, John Sepkovic, who signed simply Redstone Twp., testified his mailing address is Box 377, Fairbank, Pa.

And on line 87, Helen Gmutza, who also signed Redstone Twp., testified her mailing address is Fairbank, Pa.

The testimony of these nine electors clearly shows that street and number addresses, as well as mailing addresses, were available, but that none was given. Having failed to set forth the residence information

prescribed by the Election Code, their signatures must be considered invalid.

Without giving consideration to other patent defects which are capable of ascertainment, a recapitulation of the foregoing invalid signatures totals 22 in number. When these are deducted from the total of 114, it is patently clear that 92 signatures do not meet the statutory requirements. The petition of Edward L. Brady must also fall for this reason.

At the conclusion of the hearing, an unusual and belated attempt was made, by way of a motion, to have the testimony of the witness Minnie Valente transcribed and filed with the Election Bureau as a substituted circulator's affidavit. This motion was apparently presented in an attempt to supply an affidavit for the petition of Edward L. Brady after it became apparent that the purported affidavit of Eugene T. Hellein was void.

The law is well settled, and the Election Code provides, that . . .

"If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, or on the face of the accompanying or appended affidavits, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs as the court may specify": 25 PS §2937. This statute permits the court to act only if the objections relate to material errors or defects apparent on the face of the nomination petition. We know of no law or provision of the Election Code which gives the court any authority to allow a substitution or the amendment of the existing affidavit after the petition has been filed, when the defect is not apparent on the face thereof. The motion is denied.

If this were a simple proceeding wherein Edward L. Brady, even though a registered member of the Re-

publican party, were sincerely seeking the Democratic nomination in the coming primary for the office of Prothonotary of Fayette County, we might well try to find the words to achieve such a result. It has always been the policy of this court, as well as that of our colleagues, to construe the Election Code liberally, in the case of technical errors or defects, so as to maintain the ultimate aim of all election laws, that is, a free election in which any qualified person may submit his or her candidacy to the people. But the instant case does not fall into this category.

The testimony, as well as all the inferences logically to be drawn from it, indicates with clarity that Charles O. Dean, together with others who may have been associated with him, entered upon a course of conduct of which the sole purpose and design was to procure a candidate whose name was similar to that of his prospective opponent, Edward Brady. This name he discovered in the person of Edward L. Brady. That this person was a registered member of the opposite party did not deter Mr. Dean. Since Mr. Edward L. Brady did not take the stand and testify, the evidence indicates with clarity that Mr. Dean was the person who persuaded Mr. Edward L. Brady to permit him to use his name. The manner in which the petition was circulated, the filing thereof, and the payment of the filing fee all warrant this conclusion. Mr. Dean has slyly conceived a plan and diligently labored to carry it out. The petition of Edward L. Brady must be conceded to be solely the product of Charles O. Dean and any others who may have been associated with him.

From these facts, as we find them, we may only conclude that the sole purpose of the plan of those who may be involved therein was to confuse the voters, to gain an unfair advantage, and to perpetrate a fraud upon the electorate. The conduct of Charles O. Dean, as we

view this case, has been most brazen and reprehensible. We do not here decide that he or those associated with him are guilty of wilful and deliberate violations of the Election Code, but we shall direct the district attorney to make a full and complete investigation to ascertain and determine whether such violations, if any, do exist, and if so, to institute the necessary prosecutions.

### Order

And now, April 2, 1963, after hearing and full consideration thereof, it is ordered and directed that the nomination petition of Edward L. Brady be and the same is hereby set aside, and the objections thereto are sustained.

It is further ordered and directed that John R. Hoye, District Attorney of Fayette County, proceed with an immediate investigation of the facts and circumstances surrounding the filing of the petition of the said Edward L. Brady, of New Geneva, Fayette County, Pa., and that if said investigation shall reveal that any party or parties shall have been involved in a deliberate and wilful attempt to violate the provisions of the Election Code, his office shall forthwith commence the necessary prosecutions.